STURGIS, Judge.
The defendant in this negligence action brings this appeal to review an adverse judgment entered pursuant to verdict of the jury and denial of his motion for a new trial. The parties will be identified as. they appeared in the court below.
The question for determination is whether or not the trial court erred in refusing to charge the jury on the doctrine of sudden emergency in accordance with either of the charges requested by defendant, viz:
Charge No. 19
“You are instructed that where one, without fault of his own, is placed in a position of great mental stress or sudden emergency, the same degree of judgment or care is not required of him as is required of one who is acting under normal conditions. The test to be applied is whether or not the person in such position of great mental stress or sudden emergency, did or attempted to do what a reasonably prudent person would have done under the same or similar circumstances, and this rule is not changed by the fact that an alter-. native course of action was available. If, therefore, you find from the evidence in this case that the defendant, without fault of his own, was placed in a position of great mental stress or sudden emergency, and that while in such position he did or attempted to do what any reasonably prudent person would have done under the same or similar circumstances, then the defendánt was not negligent.”
Charge No. 20
“The court instructs the jury that, when one is placed suddenly in a situation of great danger, he is not required to use the deliberate judgment of a man under no apprehension of immediate danger.”
Appellant’s brief purports to contain a: summary of testimony “pertinent to the application of an instruction on sudden emergency,” but our review of the record reveals that said summary omits some of the material evidence before the jury and necessarily considered by the trial court in passing on the charges. Moreover, appellant did not cause to be included in the record plaintiff’s documentary exhibits Nos. 1, 2, 3, 6 and 7, used by both parties in questioning witnesses at the trial. Since the propriety of said charges, or either, depends on the state of the entire evidence, appellee-deemed it necessary to restate the same in two catgories : that which is undisputed and: that'which is controverted.
Undisputed Facts
At approximately 7:30 p. m. on August 14, 1963, the defendant, who was driving his Austin Healey sports car -northerly on. North Atlantic Avenue in Daytona Beach,, Florida, struck and seriously injured the plaintiff pedestrian who was crossing said avenue at its intersection with Boylston Avenue, an east-west road which enters from the west to form a “T” intersection which dead-ends at North Atlantic Avenue. The latter is a two-lane north-south public roadway, 21 feet in width, each traffic lane being 10ji feet wide. It is straight and level at all pertinent distances approaching and extending beyond the scene of the accident, which occurred in a residential area of the city. Williams Street, another east-west road, parallels Boylston Avenue and intersects with North Atlantic Avenue 300 feet south of the scene of the accident. Oceanside houses border the east side of North Atlantic Avenue. A residential dwelling was located at the southwest corner and a small motel at the northwest corner of the intersection of Boylston Avenue with North Atlantic Avenue. The plaintiff, Etta Peters, resided in a dwelling that *283 was located immediately east of said intersection. A semi-circular driveway, with north and south approaches, separated North Atlantic Avenue from the dwelling', to which she was repairing when struck by -defendant’s car.
Miss Peters stood one to two feet west -of the westernmost edge of North Atlantic Avenue for approximately five minutes waiting for traffic to clear before undertaking to cross the avenue at the place of an unmarked crosswalk for the Atlantic-Boyl-■ston intersection, as defined by an applicable city ordinance. At that time the intersection was illuminated by a street light overhanging North Atlantic Avenue and by the headlights of approaching motor vehicles.
The lawful speed limit at the place of the accident was 35 m. p. h. A 45 m. p. h. speed limit sign, applicable to northbound motorists on North Atlantic Avenue, was located on the east shoulder of North Atlantic Avenue 225 feet north of the south entrance to the driveway serving plaintiff’s residence. The Williams Street intersection with North Atlantic Avenue is 300 feet south of that entrance.
Defendant’s car, which he purchased for racing purposes, was equipped with a roll bar, had two bucket-type seats, and had a low center of gravity. It was so built that .the defendant driver and his passenger, one Richard Mitchell, who were en route from -defendant’s house to eat at a. drive-in restaurant and thereafter “meet dates,” sat low in the car and thus in close proximity to the road.
Defendant testified that approximately 15 seconds before he saw plaintiff and when he was “three to five, it could have been more” blocks south of Boylston Avenue, he slowed his car to permit one ahead of him to turn off the road, and from that point until he saw plaintiff, was accelerating the speed of his car which had four forward speeds and was in the fourth or high gear when he first saw plaintiff.
A skidmark left by a right tire of defendant’s car measured 96 feet in length. It extended a distance of 39 feet from a point on North Atlantic Avenue to the area of impact at the southernmost entrance of the driveway to plaintiff’s residence. From that point it continued along and on the east edge of the pavement of North Atlantic Avenue to the north side of said entrance, then off onto the sand shoulder of said avenue and continued to a point at the rear tire of defendant’s car as it came to rest, the skidmark from the point of impact being 57 feet. Defendant testified that there was a very short reaction time between the time he discovered the plaintiff and the time he applied his brakes. The right front fender of his car struck the plaintiff when she was on the easternmost edge of the paved surface of North Atlantic Avenue, throwing her into the air and against the right front corner of defendant’s car.
Defendant testified that headlights of approaching cars interfered with his ability to see into the southbound lane of North Atlantic Avenue, but admitted that despite that fact he did not reduce the speed of his car:
“Q. Did you reduce or slow your speed so that you could see, since you did have a blind area, did you reduce the speed of your automobile so you could take whatever action might be necessary if something appeared in that blind area?
“A. No, sir, I did not.”
Controverted Evidence
All witnesses, on deposition or at the trial, testified that defendant’s car approached the scene of the accident at a rate in excess of the 35 m. p. h. speed limit, but there was a variance as to how fast his car was moving. Defendant admitted, on cross-examination, that he may well have been driving at a speed in excess of 35 m. p. h. when he first saw the plaintiff. He also testified that three seconds prior to seeing *284 plaintiff lie might have been driving at a speed of 35 m. p. h. and continued to accelerate until he saw her. He said he thought the speed limit was 45 m. p. h. along the route of his approach to the point where his car struck the plaintiff. Although indefinite as to his exact speed, he testified his speed did not exceed 39 m. p. h.
William Donald Ryan, the driver of an automobile immediately following defendant’s car, testified that defendant was driving “about thirty-five and forty miles an hour” or “approximately forty miles an hour” just prior to the accident. Neil F. Shelver, III, a passenger in the Ryan automobile, testified at the trial that he estimated defendant’s speed at 30 to 35 m. p. h., while on his deposition taken nine months earlier he testified, “I would say he was making between thirty and forty miles per hour.” Richard M. Mitchell, Jr., a passenger in defendant’s automobile, testified at the trial that defendant’s car was traveling “around thirty miles per hour” immediately before the impact, but acknowledged that on deposition nine months earlier he testified that defendant’s speed was between 35 and 40 m. p. h.
The testimony is in substantial conflict as to whether defendant could or by due care should have seen plaintiff from the time she first started to cross North Atlantic Avenue. Defendant first testified that he could see both sides of the avenue as he proceeded toward the point of impact, but later testified that he could not see into the southbound lane of traffic because, being seated low to the road in his car, the headlights of approaching automobiles created a blind spot which prevented him from seeing fully into the southbound lane. At another point he testified that three seconds before he discovered the plaintiff he could see a 45 m. p. h. speed limit sign located approximately 225 feet north of the point of impact.
Witness Ryan, driver of the car immediately following defendant’s car, testified that when he was three to four car lengths south of defendant’s car he saw plaintiff in the southbound lane of traffic and that he thereupon applied his brakes without skidding his tires or having any difficulty in avoiding a collision with defendant’s automobile.
Eyewitness Margaret Neel testified she-was standing on the west side of North Atlantic Avenue approximately five feet south of the point where the plaintiff started across; that she could see defendant’s car continuously from the vicinity of Williams-Street (300 feet south of where she was standing) to the point of impact. From this testimony alone the jury could have drawn a reasonable inference that the defendant by the use of due diligence could and should have seen the plaintiff as he proceeded north on North Atlantic Avenue from its intersection with Williams Street to the point of impact, and that in the exercise of due care he could and should have avoided the accident.
* * *
The “sudden emergency” doctrine is well recognized in this jurisdiction. It is fundamental, however, that the jury should not be charged thereon unless the evidence clearly tends to establish a condition of such a sudden and unexpected nature as to deprive the actor of all reasonable opportunity for deliberation. It is not available to excuse one claiming its benefits when the emergency has been created or contributed to by his own negligence. It is, by definition, applicable only when the evidence is-such that it will support a charge of actionable negligence occurring after the person charged is faced with a sudden and unexpected emergency situation not created or contributed to by his own negligence. Applying these rules to the case on review, the-doctrine would be available to excuse the defendant only if the evidence in this cause was legally sufficient to support a charge-that defendant negligently operated his car after he discovered the plaintiff in a position of peril in consequence of events not caused or contributed to by his own negli *285 gence. The record, however, will not support that premise because there is substantial evidence to support the conclusion of the jury, inherent in its verdict, that defendant was guilty of negligent acts occurring before the so-called emergency situation developed and that such acts proximately caused or contributed to the injury suffered by plaintiff.
To instruct the jury on the doctrine of sudden emergency under the circumstances of this case would unduly focus the jurors’ attention on defendant’s conduct during a period of time (the period after he discovered plaintiff on the highway) as to which they could not, as a matter of law, have found that he committed any act of actionable negligence; and such charge in this case might well have diverted the minds of the jurors from a proper consideration of the pertinent evidence governing the basic issues of the trial.
Section 54.17, Florida Statutes, F.S.A., requires the trial judge to “charge the jury only upon the law of the case; that is, upon some point or points of law arising in the trial of said cause.” In Sirmons v. Pittman, 138 So.2d 765, 774 (Fla.App.1962), we reversed a judgment for defendant on the ground there was no competent evidence upon which the jury might have concluded that Mrs. Sirmons met her death as the result of an “unavoidable accident,” and discussing the development of the law governing the so-called doctrine of “unavoidable accident,” said:
“The great weight of authority, with which we agree, is that an instruction upon the subject of ‘unavoidable accident’ is improper and tends to mislead and confuse the jury unless there is sufficient evidence to make at least a prima facie case that the casualty in question was in fact the result of an unavoidable accident; an accident resulting from circumstances affording a reasonable basis on which to conclude that neither party was guilty of actionable negligence. A party is not entitled to an instruction on the theory of an unavoidable accident in the absence of any evidence on which to base it, or upon pleadings not raising the issue, such as where both parties charge negligence in their pleadings. Blashfield, Cyclopedia of Automobile Law and Practice, Vol. IOC, § 6698, p. 121.
“The phrase ‘unavoidable accident’, as related to the question of liability in tort actions involving damages to person or property, is somewhat of a misnomer. When a casualty occurs as a result of matters beyond the knowledge, actual or implied, of the person charged, and over which he has no control, he is relieved of liability for the simple reason that he is not guilty of actionable negligence; otherwise stated, the element of proximate cause is lacking because there is no causal connection between his acts and the damages sustained.”
The “sudden emergency” doctrine is applicable to this situation in much the same sense as the legal phrase “unavoidable accident”; and when used in the court’s instructions to a jury it often becomes necessary to give further instructions in order that the doctrine may be properly applied in determining the issues of fact involving that defense. Respectable authority supports the proposition that there is no necessity of using the term “unavoidable accident” in submitting that defense to a jury because it is the duty of the court to submit to the jury separately a fact or group of facts upon which a finding may be made indicating a right of recovery on the part of one party or a defense to that right on the part of the other. See Bailey v. Woodrum Truck Lines, Tex.Civ.App., 36 S.W.2d 1090, aff’d Com.App., 57 S.W.2d 92. Ultrarefinement of principles governing tort liability or lack of it has produced the doctrine involved in this suit, the “last clear chance” doctrine, the “unavoidable accident” doctrine, the “reasonable foresee *286 ability doctrine,” and others, which have the tendency to swallow by the tail or otherwise obscure the fundamental concept of proximate cause, upon which the question of liability must ultimately turn, legal phrases notwithstanding.
Appellant does not question the sufficiency of the evidence to support the verdict and relies on cases that are factually distinguishable from the case sub judice.
In Falnes v. Kaplan, 101 So.2d 377, 379 (Fla.1958), the Florida Supreme Court, sustaining the trial court’s refusal to instruct the jury on the so-called “last clear chance” doctrine, said:
“ * * * no definite rule can be stated with reference to factual situations in which the charge should or should not be given, * * * each case must be its own criterion. And the decision, of course, is one initially to be made by the trial judge. * * *
“We are always reluctant to interfere with the ruling of a judge when he decides what charges he should give to advise the jury of the law of the case as he is required to do by Sec. 54.17, Florida Statutes 1953, * * * after the conference held pursuant to the above rule, * *
That comment applies with equal force to the doctrine of “sudden emergency” and the charge here in question.
A careful analysis of the facts recited in Midstate Hauling Company v. Fowler, 176 So.2d 87 (Fla.1965), Nabelski v. Turner, 173 So.2d 729 (Fla.App.1965), Dupree v. Pitts, 159 So.2d 904 (Fla.App.1964), and Klepper v. Breslin, 83 So.2d 587 (Fla.1955), reveal that in each case the defendant was driving with due care when precipitated into an emergency situation which reasonable men would logically be compelled to find was not created or caused or contributed to by negligent driving. Implicit in each decision is the factual issue of whether the defendant’s action or course of conduct taken after the actual or apparent emergency arose was that which a reasonable person might or would take in the same or similar situation. The facts in the case on review afford no such latitude to the jury, whose verdict implies a finding, available under the facts, that negligent driving on the part of the defendant created or contributed to the emergency situation with which he found himself confronted.
In Midstate Hauling Company v. Fowler, supra, the defendant driver did not exceed the posted speed limit or otherwise carelessly operate his vehicle. While thus driving he discovered a child which had darted into the road ahead of his vehicle, whereupon he steered first to the left and then, as the child continued to cross the road, steered back to the right and partially off the road. During that maneuver the child stopped, totally reversed his direction, and was fatally injured when he ran into the left side of defendant’s vehicle. Thus it is seen that the child alone created the emergency that resulted in the accident, notwithstanding the driver’s efforts to avoid the child.
Klepper v. Breslin, supra, was an appeal by the unsuccessful plaintiff in a wrongful death action arising from the death of his minor son, allegedly caused by the negligent operation of an automobile. At the request of defendants the trial court charged the jury on the doctrine of “sudden emergency,” “unavoidable accident,” “darting out,” and contributory negligence of the child’s mother as being chargeable against the plaintiff father. At plaintiff’s request the jury was also charged on the “last clear chance” doctrine. The Florida Supreme Court, speaking through Mr. Justice Thor-nal for the majority, held that the trial court properly charged the jury as to the applicable law and relegated to it the problem of resolving the factual conflicts in the light thereof. The appellate court did not hold or indicate that it was necessary under the facts of that case to charge on the doctrine of unavoidable accident; only that the giving of the charge did not constitute *287 reversible error. Even so, Mr. Justice Drew, in a dissenting opinion joined by Mr. Justice Roberts, expressed the view that the negligence of the driver of the car created the accident which resulted in the death of the child and that the doctrine of sudden emergency was wholly inapplicable, citing Seitner v. Clevenger, 68 So.2d 396, 397 (Fla.1953), which holds: “To recognize the right of a defendant to escape liability under such circumstances would be to reward one for his own negligence.” The facts recited in the Klepper opinion indicate there was a triable issue as to the standard of defendant driver’s conduct during the interval which separated the onset and termination of the emergency situation, and such appears to be the basis upon which the majority held it was for the jury to say under the facts peculiar to that case whether a reasonable and prudent person would have acted as did the defendant driver after the sudden emergency situation developed, notwithstanding the fact that up to that point the driver had committed no negligent act. Under such circumstances the trial court may instruct the jury on the doctrine of sudden emergency. The facts in the case sub judice do not require the charge to be given for the reason that there was no triable issue with respect to the standard of defendant’s conduct during the brief period which separated the onset and termination of the alleged emergency situation; the defendant’s negligence, if any, consisting exclusively of acts committed prior to the onset of such situation.
In Nabelski v. Turner, supra, we held on the basis of the pleadings and factual issues there involved that the trial court properly instructed the jury on the law of sudden emergency. In that case defendant’s answer had expressly pleaded that “plaintiff was not entitled to recover because the defendant, upon being faced with a sudden emergency, acted as an ordinary person under the circumstances,” and it was established that defendant was driving 35 m. p. h. which was 10 m. p. h. under the posted speed limit. There was no evidence of negligence on her part prior to being confronted with the emergency.
The opinion in Dupree v. Pitts, supra, contains a limited recitation of the facts presented at the trial, but it is apparent that the negligent conduct charged against defendant occurred after he saw the plaintiff, a minor, dart from behind a parked station wagon and before plaintiff hit the side of defendant’s automobile. However, that case goes no further than to hold in effect that plaintiff was not prejudiced by the jury charge on the doctrine of sudden emergency. It does not hold that such charge is proper or must be given in those instances where, as in this case, the evidence is clearly susceptible to the conclusion that prior to the time the party charged was alerted to the fact that an accident was imminent he committed negligent acts proximately resulting in the tort. There is no basis for the charge when, as in this case, there is no competent evidence upon which the jury could have found that the defendant was guilty of actionable negligence (separate and apart from such prior negligence) occurring only after he became alerted t.o the impending: accident.
The Dupree case quotes with approval' the following extract from 80 A.L.R.2d 15-17:
“ * * * the evidence should be sufficient to support a finding (1) that the claimed emergency actually or apparently existed; (2) that the perilous situation was not created or contributed to by the person confronted, or, as held or stated in many cases, by the tortious act or conduct of such person; (3) that alternative courses of action in meeting the emergency were open to such person, or that there was an opportunity to take some action to avert the threatened casualty; and (4) that the action or course taken was such as would or might have been taken by a person of reasonable prudence in the same or a similar situation.”
*288 Applying said criteria to the facts of this case, the record reveals:
(1) Existence of an Emergency— When defendant finally discovered plaintiffs presence on the highway he was, of course, confronted with an emergency situation. This is true of all automobile collision cases where the actor becomes aware a collision is imminent, but such does not of itself require an instruction on the so-called doctrine of “sudden emergency.” The doctrine “must he kept within narrow limits if we are to have anything like safety upon our streets and highways with our present rapid means of locomotion.” Frazee v. Gillespie, 98 Fla. 582, 124 So. 6, 8 (1929). Cf. Burdette v. Phillips, 76 So.2d 805, 808 (Fla.1954), (dissenting opinion of Justice Hobson). The defendant in the case on review testified he first discovered the plaintiff and realized the existence of an emergency when he was approximately 35 feet from the point of impact. There is ample evidence to support a finding that he could and by the use of due diligence should have seen her sooner. If, however, as he testified, he was blinded by oncoming headlights, it was for the jury to determine whether in the exercise of due care he could and should have reduced instead of accelerated the speed of his car, either of which courses of action might have allowed plaintiff the additional fraction of a second necessary to reach a point of safety. The jury’s conclusion that defendant was guilty of negligence implies a finding that—
(2) The perilous situation was created by his careless driving. We have discussed the material evidence of the several witnesses touching upon the speed of defendant’s vehicle immediately prior to the time he observed the plaintiff on the highway. It was for the jury to determine whether that speed constituted negligence on defendant’s part, and in that connection to consider his act in the light of an ordinance of the city of Daytona Beach which required him to drive his car at an appropriately reduced speed when approaching the intersection where the accident occurred.
(3) It does not appear that defendant had an opportunity to take any alternative course of action to avert the accident. Accepting the evidence in the light most favorable to the argument of his brief, “He had less than a second in which to act and less than 35 feet in which to avoid striking Miss Peters.” Since at 35 m. p. h. defendant’s car would travel 51.3 feet per second, it is obvious he had no opportunity after discovering the emergency situation to avert the collision. The evidence indicates he could not drive to his left for any appreciable distance into the southbound traffic lane due to approaching traffic, and he could not drive more to the right without striking plaintiff more to the center of his automobile.
Questions presented here regarding defendant’s negligence and plaintiff’s contributory negligence were jury questions, and are final so far as review in this court is concerned.
The charge on “sudden emergency” requested by the defendant was not applicable to the facts, and the trial judge properly declined to give it. See Smith v. Cobb, 61 So.2d 378 (Fla.1952).
Finding no error, the judgment is
Affirmed.
WIGGINTON, Acting C. J., and JOHNSON, J., concur.