KAREN J. HALLETT, administratrix, & others[1] *vs*.
TOWN OF WRENTHAM.

Norfolk. September 11, 1986. — November 13, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Massachusetts Tort Claims Act. Negligence*, Municipality, Causing death, Causing loss of consortium, Causing loss of parental society, Standard of care. *Municipal Corporations*, Liability for tort. *Damages*, For death, Loss of parental society, Loss of consortium. *Husband and Wife*, Consortium. *Parent and Child*, Loss of parental society. *Executor and Administrator*, Action for death. *Constitutional Law*, Equal protection of laws, Limitation on recovery for damages. *Evidence*, Expert opinion.

The wrongful death statute, G. L. c. 229, § 2, provides the exclusive action for recovery of the damages it encompasses by the designated beneficiaries, and separate claims may not be maintained for the benefit of a decedent's wife and minor children seeking recoveries for loss of consortium and loss of parental society. [552-556]

The $100,000 limitation on recovery from a governmental entity prescribed by the Massachusetts Tort Claims Act, G. L. c. 258, § 2, was to be applied to the total recovery by an administratrix in a wrongful death action against a town, rather than separately to the damages awarded to the decedent's wife and children. [556]

Article 11 of the Massachusetts Declaration of Rights creates no fundamental right to recover unlimited damages. [557]

The $100,000 limitation on recovery from a governmental entity prescribed by the Massachusetts Tort Claims Act, G. L. c. 258, § 2, is rationally related to a legitimate State purpose, the protection of public funds, and thus infringed no equal protection rights of plaintiffs in a wrongful death action against a town. [558]

Where, at the trial of a negligence action arising out of a collision of two motor vehicles, the judge correctly instructed the jury as to the applicable standard of care ("how a person of ordinary prudence would act in similar circumstances"), he was not required to instruct them that an emergency condition is a factor in determining the reasonableness of the defendant's choice of action. [558-559]

---

[1] Lisa Marie Hallett, William Robert Hallett and Jacqueline Diane Hallett, by their mother and next friend, Karen Hallett.

At the trial of a negligence action, where the judge initially permitted a police officer, testifying as an expert in accident investigation, to give his opinion that a certain skid mark was caused by the right front tire of the decedent's vehicle, the judge did not err in thereafter instructing the jury, in substance, that they "have as much knowledge as [the witness] does" as to what caused the skid mark since the facts were uncomplicated and the comparison which was called for required no particular expertise or special skill. [559]

CIVIL ACTION commenced in the Superior Court Department on March 20, 1980.

The case was tried before *George N. Hurd, Jr.*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Leonard F. Zandrow, Jr.* (*Robert L. Farrell & Richard L. Neumeier* with him) for the defendant.

*Anthony C. Adamopoulos* for the plaintiffs.

HENNESSEY, C.J. William Hallett was killed on February 22, 1980, when the car he was driving collided with a town of Wrentham sanding truck driven by Robert A. Correia, a town employee.[2] Karen Hallett, the deceased's widow and administratrix, filed a wrongful death action against the town, and subsequently amended her complaint to add the three children of the deceased as separate plaintiffs seeking damages for loss of their father's society. Over the defendant town's objections,[3] a judge of the Superior Court permitted the separate claims to proceed before a jury. The jury found Correia seventy per cent negligent, and Hallett thirty per cent negligent, and awarded damages of $575,000 for the loss of the decedent's reasonably expected net income, $25,000 for Karen Hallett's loss of her husband's consortium, and $50,000 for each of the three children's loss of parental society. The town moved that

---

[2] A directed verdict was entered in favor of Correia.

[3] The town asserted its position seasonably at various times in the proceedings by a motion to dismiss or motion for partial summary judgment, a motion in limine, motions for a directed verdict at the close of the plaintiffs' evidence and at the close of all the evidence, a motion for entry of judgment in the amount of $100,000 after the jury's verdict, and a motion for judgment notwithstanding the verdict.

judgment be entered in the amount of $100,000, the maximum recovery under G. L. c. 258, § 2, and that the three children's $50,000 awards be dismissed on the ground that there is no separate recovery for the children outside the wrongful death statute, G. L. c. 229, § 2. The judge combined Karen Hallett's $25,000 consortium award with the $575,000 for loss of income, and reduced it to $100,000. The judge ordered judgment in the amount of $50,000 for each child. Both parties appealed, and this court granted direct appellate review.

The town raises three issues on appeal. First, the town argues that the judge erred in permitting separate recoveries outside the wrongful death statute for the children's loss of parental society. Second, the town contends that the judge committed reversible error when, after the town's expert on accident investigation testified, over objection by the plaintiffs, that skid marks at the accident site were caused by Hallett's car, the judge said to the jury that his opinion involved "an area in which you as lay people, I believe, have as much knowledge as he does." Finally, the town appeals the judge's refusal to give an "emergency" instruction as part of his charge on negligence.

The plaintiffs also appealed, arguing that the $100,000 cap is unconstitutional, or in the alternative that each consortium award under the wrongful death act should be subject to a separate $100,000 cap.

There was evidence that the Hallett vehicle was proceeding westbound on West Street and the town truck was proceeding eastbound on West Street when the two vehicles collided, causing Hallett's death. A principal issue for the jury was to determine which vehicle was proceeding on its wrong side of the highway.

1. The town's first contention is that the judge erred in entering separate judgments for loss of parental society for each of the victim's three children in addition to the wrongful death and loss of consortium claims brought by Karen Hallett, the wife and administratrix of the deceased. The town argues that the children's claims for parental society should have been joined with Karen Hallett's claims for loss of consortium and

wrongful death for the purpose of applying the $100,000 cap on recoveries from the government under G. L. c. 258, § 2. The plaintiffs, on the other hand, argue that the deceased's children have independent claims for loss of society. Therefore, they argue, under the "per plaintiff" construction of the $100,000 cap announced in *Irwin* v. *Ware*, 392 Mass. 745 (1984), the children's recoveries for loss of society should each be separately considered in applying the cap.

We conclude that the $100,000 limitation imposed by G. L. .c. 258, § 2, applies to all claims comprised by the wrongful death statute, G. L. c. 229, § 2.[4] The cap should be applied to the sum of recoveries for which the wrongful death statute provides. See *Doyon* v. *Travelers Indem. Co.*, 22 Mass. App. Ct. 336, 338-339 (1986).

The plaintiffs contend that claims for loss of society stand independent of G. L. c. 229, § 2, and the plaintiffs have the option of recovery either under the statute or independently. Thus, the plaintiffs argue that each beneficiary's claim for society must be treated as a separate "plaintiff" under *Irwin* v. *Ware*, even if nominally brought in a single action by the executor or administrator of the deceased.[5]

---

[4] General Laws c. 229, § 2, provides in pertinent part: "A person who . . . by his negligence causes the death of a person . . . shall be liable in damages in the amount of: (1) the fair monetary value of the decedent to the persons entitled to receive the damages recovered, as provided in section one, including but not limited to compensation for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent to the persons entitled to the damages recovered; (2) the reasonable funeral and burial expenses of the decedent. . . . Damages under this section shall be recovered in an action of tort by the executor or administrator of the deceased. An action to recover damages under this section shall be commenced within three years from the date of death or within such time thereafter as is provided by section four, four B, nine or ten of chapter two hundred and sixty."

[5] Identifying the "plaintiff" is a problem only when the wrongful death action is brought against a governmental entity covered by G. L. c. 258, § 2. There is no limit to the liability of private defendants. In a purely private action, the executor or administrator presents the damages of the designated beneficiaries, and the recovery is distributed to the beneficiaries. In an action against a governmental entity, on the other hand, G. L. c. 258, § 2, provides "public employers shall not be liable . . . for any amount in excess of one hundred thousand dollars."

The origin of the wrongful death statute and its relationship to the common law were discussed at length in *Gaudette* v. *Webb*, 362 Mass. 60 (1972). Prior to *Gaudette*, it was generally asserted "that there is no common law basis for a cause of action for death, and that such a cause of action in this Commonwealth is wholly a creature of our death statutes." *Id.* at 66. Consequently, it was argued that the limitations period for commencing an action under the death statute limited the rights as well as the remedy, rendering the tolling provisions of the general statute of limitations of G. L. c. 260, § 1, inapplicable to a wrongful death action under G. L. c. 229, § 2. *Id.* at 66-67. In rejecting that contention we stated that "the law in this Commonwealth has also evolved to the point where it may now be held that the right to recovery for wrongful death is of common law origin . . . . Consequently, our wrongful death statutes will no longer be regarded as 'creating the right' to recovery for wrongful death. They will be viewed rather as: (a) requiring that damages recoverable for wrongful death be based upon the degree of the defendant's culpability; (b) prescribing the range of the damages recoverable against each defendant; (c) *requiring that any action for wrongful death be brought by a personal representative on behalf of the designated categories of beneficiaries*; and (d) requiring that the action be commenced within the specified period of time, as a limitation on the remedy and not upon the right" (emphasis added). *Id.* at 71.

Based on the holding that the actions for wrongful death are of common law origin, the plaintiffs in this case reason that they had the option of collecting under the death statute, or of waiving recovery under it and proceeding with independent claims for loss of parental society. The plaintiffs seek support for their position in this court's recognition that the spouse and children of an injured person may be entitled to recover for loss of consortium and society. *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507, 516 (1980) (children may assert claim for loss of society of injured parent). *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 167-168 (1973) (holding that either spouse may assert consortium claim arising from negligent injury

to other spouse). See *Feltch* v. *General Rental Co.*, 383 Mass. 603, 608 (1981) (consortium claim independent of injured spouse's claim for damages, thus recovery not reduced by injured spouse's comparative negligence). The plaintiffs have misinterpreted our holding in *Gaudette*. Although in that case we held that the statute did not create the right to recovery for wrongful death, we also held that the statute would be viewed as "requiring that any action for wrongful death be brought by a personal representative on behalf of the designated categories of beneficiaries." *Id.* at 71. *Gaudette* does not stand for the proposition that the requirements of the statute may be disregarded. Instead, that case held that the right underlying a wrongful death action was of common law origin, and the death statute specifies the procedure and recovery.

Neither do *Diaz* and *Ferriter* create an independent right of recovery for lost consortium where the victim suffers death rather than injury. Prior to *Diaz* and *Ferriter*, wives and children could recover for loss of consortium under the death statute, but not under common law. *Diaz, supra* at 167-168. *Ferriter, supra* at 515-516. This court reasoned in *Ferriter*: "We think it entirely appropriate to protect the child's reasonable expectation of parental society when the parent suffers negligent injury rather than death." *Id.* The plaintiffs now seek to use *Ferriter* to establish a right to recovery apart from the death statute for loss of society resulting from a wrongful death. The statute, however, provides for such a recovery, and determines the procedure for bringing an action.

The wrongful death statute provides for a single action brought by the decedent's executor or administrator. The executor or administrator presents all claims by the designated beneficiaries for damages flowing from the wrongful death. See *Gaudette* v. *Webb, supra* at 72 ("administratrix . . . acts merely as a representative or conduit for the children's recovery"). General Laws c. 229, § 2, provides, "Damages under this section shall be recovered in *an action* of tort by the executor or administrator of the deceased. *An action* to recover damages under this section shall be commenced within three years from the date of death . . ." (emphasis added). Moreover,

the statute provides for the elements of recovery, including "services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent . . . ." Thus there can be only one plaintiff in a wrongful death action who asserts all claims by the designated category of beneficiaries for damages resulting from wrongful death. See *Minkley* v. *McFarland*, 371 Mass. 891 (1976) (rejecting claims for independent common law recovery, but applicable only to actions governed by wrongful death statute prior to 1974 amendment); *Gouras* v. *Barchi*, 5 Mass. App. Ct. 845, 845-846 (1977) (disallowing separate claims for consortium). See also *Owen* v. *Meserve*, 381 Mass. 273, 275 (1980), cert. denied, 449 U.S. 1082 (1981). Cf. *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323, 334 (1982) (holding that claim for emotional distress is an independent claim for plaintiff's own damages, and not "preempted" by G. L. c. 229, § 2).

In *Irwin* v. *Ware*, 392 Mass. 745, 766-773 (1984), this court construed the cap on liability as established in G. L. c. 258, § 2, to apply on a "per plaintiff" basis. The plaintiffs argue that our reasoning in *Irwin* is supportive of their position. We disagree. The *Irwin* case arose from an accident involving an automobile occupied by Debbie Irwin, her husband Mark, and their two children, Steven and Misty Jane. Debbie and Steven were injured in the accident; Mark and Misty Jane were killed. The complaint asserted claims for injuries to Debbie and Steven, as well as claims for wrongful death and loss of consortium. Nothing that we said in the *Irwin* case is inconsistent with our reasoning in the instant case. The issue we confront here was not raised or argued in *Irwin*.

We conclude that the wrongful death act, G. L. c. 229, § 2, provides the exclusive action for the recovery of the damages it encompasses by the designated beneficiaries. The plaintiffs may not maintain a separate action for loss of consortium. In addition, the $100,000 limitation on recovery from a governmental entity, G. L. c. 258, § 2, applies to the total recovery by the executor or administrator in the wrongful death action, and not separately to each beneficiary's damages.

2. The plaintiffs argue that the $100,000 limitation on recoveries from governmental entities denies them the equal protection of the laws. We begin by noting that the plaintiffs bear a heavy burden in overcoming the statute's presumption of constitutionality. *Klein* v. *Catalano*, 386 Mass. 701, 706 (1982), citing *El Paso* v. *Simmons*, 379 U.S. 497, 508-509 (1965). *American Mfrs. Mut. Ins. Co.* v. *Comm'r of Ins.*, 374 Mass. 181, 190 (1978). "Where there is no infringement of fundamental rights or any suspect class, a statutory discrimination will be upheld if it is 'rationally related to a legitimate State purpose.'" *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 649 (1977), quoting *Zayre Corp.* v. *Attorney Gen.*, 372 Mass. 423, 433 (1977).

The plaintiffs argue that this court should apply strict scrutiny to the $100,000 limitation, requiring that the classification be necessary to the achievement of a compelling State interest. The plaintiffs assert that the cap violates a fundamental right to recover full damages established by art. 11 of the Massachusetts Declaration of Rights. We conclude that art. 11 does not create such a fundamental right. "The article is clearly directed toward the preservation of procedural rights and has been so construed." *Pinnick* v. *Cleary*, 360 Mass. 1, 11-12 (1971). "A limitation on the recovery of damages for wrongful death does not impinge on a constitutionally protected substantive right and is not predicated on a constitutionally suspect classification." *Owen* v. *Meserve*, 381 Mass. 273, 275 (1980) (upholding exception from liability for wrongful death for operators of railroads negligently killing person not properly on railroad). See also *Ryszkiewicz* v. *New Britain*, 193 Conn. 589, 598 (1984) (constitutional provision "granting access to courts for redress of grievances . . . cannot be construed as granting an unqualified right to recover unlimited damages from government entities"). *Stanhope* v. *Brown County*, 90 Wis. 2d 823, 845 (1979) (State Constitution's "certain remedies" clause did not require that the victim of a governmental tortfeasor be allowed to recover the full amount of damages above and beyond the statutory $25,000 limit). We hold that art. 11 of the Declaration of Rights does not create a fundamental right to recover unlimited damages.

The proper standard of review of an act of the Legislature, therefore, is whether the statute is rationally related to a legitimate State purpose. *Pinnick* v. *Cleary, supra* at 27-31. *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 649 (1977). In *Morash & Sons* v. *Commonwealth*, 363 Mass. 612 (1973), this court stated that the doctrine of sovereign immunity is "logically indefensible." *Id.* at 618-619. At the same time, this court noted: "Clearly, there should be limits to governmental liability and exceptions to the rule of liability, based upon considerations of justice and public policy." *Id.* at 623. "[W]e stress that abrogation of governmental immunity need not necessarily mean that governmental entities would be liable for all harm which results from the conduct of their activities." *Whitney* v. *Worcester*, 373 Mass. 208, 212 (1977).

In enacting the Massachusetts Tort Claims Act, the Legislature demonstrated "a legislative intent to be protective of the public funds, reflected in the exclusion of punitive damages and prejudgment interest [and the $100,000 limitation]," and that the legislative scheme "ensures that a meaningful recovery will be available to victims of public employee negligence, while simultaneously limiting a public employer's exposure to excessive liability." *Irwin* v. *Ware*, 392 Mass. 745, 772 (1984). Protecting public funds from unlimited liability is a legitimate legislative purpose, and the $100,000 limitation on governmental liability is reasonably calculated to further that purpose. We conclude that the $100,000 limitation contained in G. L. c. 258, § 2, does not violate equal protection.

3. We have concluded that the town is correct in its arguments as to damages. We turn now to dispose of two contentions of error which the town says entitle it to a new trial.

The town argues error in that the judge declined to give an "emergency" instruction requested by the town as part of the instructions on the standard of care. The town asserts that the judge had an "obligation to instruct specifically that a diminished standard of care may be applicable when a person is confronted with an emergency."

The standard of care in negligence cases is "how a person of ordinary prudence would act in similar circumstances."

*LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 27 (1979), citing *Goldstein* v. *Gontarz*, 364 Mass. 800, 805-806 (1974). Restatement (Second) of Torts §§ 283, 298 (1965). The judge instructed the jury in accordance with that standard. Evidence of an emergency does not require application of a different standard, as the town urges. Instead, the emergency condition is a factor in determining the reasonable character of the defendant's choice of action. *Newman* v. *Redstone*, 354 Mass. 379, 383 (1968). Restatement (Second) of Torts § 296 (1965). W. Prosser & W. Keeton, Torts § 33 at 196-197 (5th ed. 1984). The cases the town cites in support of its contention that it was "entitled to a specific jury instruction" establish only that a judge *may* instruct the jury that the emergency conditions are a factor in determining the reasonableness of the defendant's actions, not that the judge *must* give such an instruction. See *Wilborg* v. *Denzell*, 359 Mass. 279, 286 (1971); *Bonds* v. *Cummings*, 357 Mass. 763, 764 (1970); *Donovan* v. *Mutrie*, 265 Mass. 472, 476 (1929). Although the evidence may have warranted the judge in instructing upon emergency conditions, he was not required to do so.

The town also claims error in the exclusion of an expert opinion. At trial, the town examined Wrentham police officer William MacKenzie as an expert in accident investigation. MacKenzie had investigated the accident, and his testimony included his observations of skid marks at the accident site. He explained the difference between "accelerating" and "decelerating" (or "braking") skid marks, and between "scrub" and "friction" skid marks. In addition, MacKenzie described his observations comparing the skid mark on the road to the tires from the Hallett vehicle. In answer to a question from the town's attorney as to what caused the skid mark on the road, MacKenzie replied, over the plaintiffs' objection, that in his opinion the mark was caused by the right front tire on the Hallett vehicle. Subsequently, the judge in effect reversed his ruling, and instructed the jury in substance that they "have as much knowledge as [MacKenzie] does" as to what caused the skid mark. There was no error. The facts were uncomplicated, and the comparison which was called for required no particular expertise or special skill.

4. Because we hold that the $100,000 cap of G. L. c. 258, § 2, applies to all claims contemplated by the wrongful death statute, G. L. c. 229, § 2, we remand this case to the Superior Court for the entry of a single judgment in the amount of $100,000 in favor of Mrs. Hallett as administratrix, in satisfaction of all claims. The complaint is to be dismissed as to the "independent" claims of the three children.

*So ordered.*