942 P.2d 445

**Bruce P. MYHAVER and Barbara A. Myhaver, husband and wife, Plaintiffs/Appellants/Cross–Appellees.**

v.

**Elmo G. KNUTSON and Lois Knutson, husband and wife, Defendants/Appellees/Cross–Appellants.**

No. CV–96–0400–PR.

Supreme Court of Arizona, En Banc.

July 15, 1997.

David Brnilovich, and Treon, Strick, Lucia & Aguirre, P.A. by Arthur G. Newman, Jr., Pheonix, for Plaintiffs/Appellants/Cross–Appellees.

Steven J. Wells & Associates by Edwin R. Roberts William F. Begley, Tempe, for Defendants/Appellees/Cross–Appellants.

Bury, Moeller, Humphrey & O'Meara by Andrew J. Petersen, Tucson, for Amicus Curiae Arizona Association of Defense Counsel.

## OPINION

FELDMAN, Justice.

Plaintiffs Bruce and Barbara Myhaver sought review of a court of appeals' decision holding that the "sudden emergency" instruction was properly given in a case arising out of an automobile collision. *See Myhaver v. Knutson*, No. 2 CA–CV 95–0279 (Ariz.Ct. App. May 21, 1996) (Memorandum Decision). We granted review to determine whether a sudden emergency instruction is ever appropriate under the principles espoused in *Rosen v. Knaub*, 175 Ariz. 329, 857 P.2d 381 (1993) (disapproving the "sudden appearance" instruction), and *Petefish v. Dawe*, 137 Ariz. 570, 672 P.2d 914 (1983). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), Ariz.R.Civ.App.P. 23, and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

In November 1990, Elmo Knutson was driving north on 43rd Avenue near Bell Road in Phoenix when Theresa Magnusson entered 43rd Avenue from a shopping center driveway and headed south in Knutson's lane. Seeing Magnusson's car in his lane, Knutson accelerated and swerved left, avoiding what he perceived to be an impending head-on collision. In doing this, he crossed the double yellow line into oncoming traffic and collided with Bruce Myhaver's pickup. Magnusson continued south not realizing she was involved. A police officer who saw the accident stopped her a short distance away and asked her to return to the scene.

Myhaver was seriously injured as a result of the collision and brought a damage action against both Knutson and Magnusson. Magnusson settled and was named as a non-party at fault, and the Myhavers proceeded to trial against Knutson.

Prior to trial, the Myhavers moved for partial summary judgment, questioning the viability of the sudden emergency instruction. The parties submitted memoranda on the effect of the then-recently decided *Rosen* case. Following oral argument, the judge acknowledged that *Rosen* cast doubt on the propriety of the sudden emergency instruc-tion but denied the Myhavers' motion, noting that *Petefish* had never been overruled.

At trial, a different judge ruled that the instruction was appropriate under the facts and instructed the jury as follows:

In determining whether a person acted with reasonable care under the circumstances, you may consider whether such conduct was affected by an emergency.

An "emergency" is defined as a sudden and unexpected encounter with a danger which is either real or reasonably seems to be real. If a person, without negligence on his or her part, encountered such an emergency and acted reasonably to avoid harm to self or others, you may find that the person was not negligent. This is so even though, in hindsight, you feel that under normal conditions some other or better course of conduct could and should have been followed.

RAJI (Civil) 2d Negligence 6.

The jury found Knutson not liable. On appeal, the Myhavers argued that the sudden emergency doctrine is inconsistent with Arizona's adoption of comparative negligence and should thus be abandoned. Alternatively, they urged that the trial judge erred in giving the instruction under the facts of the case and that it constituted an impermissible comment on the evidence, violating Ariz. Const. art. 6, § 27.

The court of appeals observed that although the sudden appearance instruction was disapproved in *Rosen*, use of the sudden emergency instruction had never been disapproved or overruled. In addition, the court noted that *Petefish* not only approved the instruction but distinguished sudden emergency from sudden appearance. *Petefish*, 137 Ariz. at 573 n. 1, 672 P.2d at 917 n. 1. The court of appeals therefore concluded the instruction was properly given. The court stated further that even if it had been improper, there was no prejudice because the instruction given contemplated the possibility of Knutson's antecedent negligence and the Myhavers were free to argue that possibility.

We granted review to consider the propriety of giving the instruction in this or any case.[1]

## DISCUSSION

### A. The sudden emergency doctrine

The RESTATEMENT (SECOND) OF TORTS § 296 (1965), discusses "emergency" as follows:

(1) In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency which requires rapid decision is a factor in determining the reasonable character of his choice of action.

(2) The fact that the actor is not negligent after the emergency has arisen does not preclude his liability for his tortious conduct which had produced the emergency.

■ Thus, the sudden emergency instruction tells the jury that in the absence of antecedent negligence, a person confronted with a sudden emergency that deprives him of time to contemplate the best reaction cannot be held to the same standard of care and accuracy of choice as one who has time to deliberate. *See* Jeffrey F. Ghent, Annotation, *Modern Status of Sudden Emergency Doctrine*, 10 A.L.R.5th 680, 687 (1993). Criticism of this doctrine has focused on its ability to confuse a jury as to (1) whether the reasonable person standard of care, or some lower standard, applies in an emergency; and (2) how it affects the application of comparative negligence principles.[2] *Id.* The annotation's author notes that a few jurisdictions have abolished sudden emergency instructions, either generally or just in automobile accident cases, while others have discouraged their use, sometimes placing specific restrictions on which cases are appropriate for their use. *Id.* at 688. However, several jurisdictions still explicitly retain the sudden emergency doctrine, either

generally or with the qualification that sudden emergency instructions are allowed but not required. *Id.* at 695.

Consideration of a sudden emergency is, of course, not a separate doctrine but only a part of the determination of what is reasonable care under the circumstances.

The law does not require of the actor more than it is reasonable to expect of him under the circumstances which surround him. Therefore, the court and jury in determining the propriety of the actor's conduct must take into account the fact that he is in a position where he must make a speedy decision between alternative courses of action and that, therefore, he has no time to make an accurate forecast as to the effect of his choice. The mere fact that his choice is unfortunate does not make it improper even though it is one which the actor should not have made had he had sufficient time to consider all the effects likely to follow his action.

RESTATEMENT (SECOND) OF TORTS § 296 cmt. b.

Commentators on Arizona's negligence law have described the problem and the present state of our law as follows:

Conceptually, the emergency doctrine is not an independent rule. It is merely an application of the general standard of reasonable care; the emergency is simply one of the circumstances faced. Arguably, giving a separate instruction on sudden emergency focuses the jury's attention unduly on that aspect of a case. The Arizona Supreme Court has expressly declined to decide the question of the propriety of a separate emergency instruction.

JEFFERSON L. LANKFORD & DOUGLAS A. BLAZE, THE LAW OF NEGLIGENCE IN ARIZONA § 3.5(1),

---

1. We note, however, that our Civil Jury Instructions Committee
   is divided concerning use of the sudden emergency instruction. Some members believe the substance is covered by general fault instructions, and that this instruction is cumulative and should rarely, if ever, be given. *See Rosen v. Knaub*, 175 Ariz. 329, 857 P.2d 381 (1993). Other members believe that the instruction is

   not cumulative and is appropriate in some cases.
   RAJI (Civil) 3d Negligence 6, Comment.

2. The doctrine evidently had its origins as a defense to contributory negligence, so it is of less consequence in states like Arizona that have adopted comparative negligence.

at 43 (1992) (citing *Petefish*, 137 Ariz. at 575[n. 2], 672 P.2d at 919[n. 2] ).[3]

The question we declined to reach in *Petefish* is squarely before us in this case. Petefish was a passenger in Dawe's truck. Dawe was following a car around a curve when he was suddenly blinded by what he believed to be the car's headlights coming back on the wrong side of the road. He applied his brakes and turned his steering wheel sharply to the right to avoid the perceived head-on collision. As a result, the truck ran off the road and rolled.

In Petefish's subsequent damage action, Dawe claimed he was forced to run off the road to avoid the perceived emergency, arguing that his evasive actions were therefore appropriate and reasonable. Instructed on the sudden emergency doctrine, the jury returned a verdict in favor of Dawe. On Petefish's appeal, we recognized that a sudden emergency is simply a factor to "be considered in determining what is reasonable care under the circumstances. The law recognizes 'the impulses of humanity when placed in dangerous positions, and does not expect thoughtful care from the persons whose lives are thus endangered.'" 137 Ariz. at 575, 672 P.2d at 919 (citations omitted). However, even in an emergency the "conduct required is still that of a reasonable person under the circumstances. The emergency is merely a circumstance to be considered in assessing the actor's conduct." *Id.* The instruction is applicable only when the actor either faced or reasonably perceived imminent peril. *Id.* at 574, 672 P.2d at 918. Therefore, we affirmed "the rule that an actor is not entitled to the benefit of the emergency doctrine when his own negligence has been a cause of the emergency." *Id.* at 572, 672 P.2d at 916.

These concepts were contained in the uniform instruction given in the instant case. *See Petefish,* 137 Ariz. at 577 n. 6, 672 P.2d at 921 n. 6.

We reached a different result in *Rosen,* in which a sixteen-year-old skateboarding at night was hit by Knaub's truck. Knaub claimed that Rosen suddenly appeared in the street, leaving no time to avoid the impact; Rosen argued that Knaub's excessive speed caused the accident. A jury returned a defense verdict, and we granted review to consider the propriety of the "sudden appearance" and "unusual event" instructions given by the trial judge. We explained:

> [A] motorist, under quite ordinary circumstances, might indeed have a duty to anticipate the often unpredictable behavior of children, including their sudden appearance in the roadway.

175 Ariz. at 331, 857 P.2d at 383. Thus, we held that the judge erred by instructing "that *the driver of an automobile is not required to anticipate the sudden appearance of children in his pathway under ordinary circumstances.*" *Id.* at 330, 857 P.2d at 382 (emphasis added). Likewise, we found the unusual event instruction to be an incorrect statement of the law,[4] holding:

> The instruction erroneously suggests that a person *never* has the duty to anticipate "unusual" or "unlikely" events. It improperly equates "usual" or "likely" with "foreseeable." It thus fails to recognize that an event can be both unusual and foreseeable, a finding generally reserved to the trier of fact.

*Id.* at 332, 857 P.2d at 384.

The Myhavers highlight *Rosen*'s language disapproving the sudden appearance instruc-

---

3. *[T]he question of whether our trial courts should refuse sudden emergency instructions because they are subsumed within the concept of the general negligence instruction has not been raised by the parties and is, therefore, not reached by this opinion. Further, even if it is not reversible error to refuse the instruction, once it is given, it must certainly be given in words which correctly inform the jury of all of the operative principles of law, including that which limits the applicability of the instruction to situations where the imminent danger is real or is reasonably apprehended to be real by the actor.*

*Petefish,* 137 Ariz. at 575 n. 2, 672 P.2d at 919 n. 2 (emphasis added).

4. The judge in *Rosen* also informed the jury:

> You are instructed that all persons are *required by law only to anticipate and foresee and guard against what usually happens, or is likely to happen, but that they are not required to foresee and provide against that which is unusual and not likely to happen* . . . .

*Id.* at 331, 857 P.2d at 383 (emphasis added).

tion because of its implicit suggestion that a " 'sudden appearance' is a uniquely important defense existing separate and apart from ordinary principles of negligence." *Id.* at 331, 857 P.2d at 383. They argue that this reasoning is equally applicable to the sudden emergency instruction, persuasively contending that a sudden appearance is merely one type of sudden emergency. However, in *Petefish* we implicitly distinguished the sudden emergency and sudden appearance doctrines. *Petefish,* 137 Ariz. at 573 n. 1, 672 P.2d at 917 n. 1.

A similar distinction is made by the leading commentators on negligence law, noting that a

> further qualification which must be made is that some "emergencies" must be anticipated, and the actor must be prepared to meet them when he engages in an activity in which they are likely to arise. Thus, under present day traffic conditions, any driver of an automobile must be prepared for the sudden appearance of obstacles and persons in the highway, and of other vehicles at intersections, just as one who sees a child on the curb may be required to anticipate its sudden dash into the street, and his failure to act properly when they appear may be found to amount to negligence.

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 33, at 197 (5th ed. 1984). Sudden appearances and similar common emergencies, such as cars that fail to stop at controlled intersections, are often not true *sudden* emergencies. Thus, in cases such as *Rosen,* neither instruction is appropriate. If the sudden emergency instruction is to be given at all, it should be reserved for the true emergency.

Prosser agrees, stating that it is often the case that "[d]espite the basic logic and simplicity of the sudden emergency instruction, it is all too frequently misapplied on the facts or misstated in jury instructions." Keeton, *supra* § 33, at 197. As a result, some states hold that the instruction should never be given. *See, e.g., DiCenzo v. Izawa,* 68 Haw. 528, 723 P.2d 171 (1986); *Knapp v. Stanford,* 392 So.2d 196 (Miss.1980); *McClymont v. Morgan,* 238 Neb. 390, 470 N.W.2d 768

(1991). Other states do not require the instruction be given, leaving it to the trial judge's discretion. *See, e.g., Compton v. Pletch,* 580 N.E.2d 664 (Ind.1991); *Hallett v. Town of Wrentham,* 398 Mass. 550, 499 N.E.2d 1189 (1986); *McCorvey v. Utah State Dep't of Transp.,* 868 P.2d 41 (Utah 1993); *Bentley v. Felts,* 248 Va. 117, 445 S.E.2d 131 (1994).

*Knapp,* which is similar to *Petefish,* is a good example of those cases abandoning the sudden emergency instruction. The defendant, faced with an oncoming car in his lane of travel, swerved to his right and went off the shoulder of the road. After the other car passed him, he swerved back to his left and lost control of his car. *Knapp,* 392 So.2d at 197. The Mississippi Supreme Court held that the emergency instruction was inappropriate because the emergency was over at the time the accident occurred, the two cars having passed each other and defendant having undertaken to return to the road. *Id.* at 198. It further concluded that the instruction should not be given in the future because a sudden emergency was simply a factor to be considered in determining reasonable conduct and a separate instruction might overemphasize that factor as well as confuse the jury on comparative negligence issues. *Id.* at 198–99.

Although criticizing the instruction and holding that it need not be given, other states leave it to the judge's discretion. Massachusetts has held that a judge may instruct the jury that emergency conditions "are a factor in determining" whether a party acted with reasonable care. *Hallett,* 499 N.E.2d at 1194–95. A number of states have carefully analyzed the issue and concluded that the instruction should not be routinely given in every claim of emergency. By definition, most accidents involve an emergency. These courts have concluded that the instruction should be discouraged because of the factors already mentioned, though it may be given, in the judge's discretion, in the few cases presenting true, unanticipated emergencies. *See, e.g., Ellwood v. Peters,* 182 So.2d 281 (Fla.App.1966) (jury should be instructed only when evidence is clear that actor was faced with situation depriving him of all rea-

sonable opportunity for deliberation); *Gagnon v. Crane,* 126 N.H. 781, 498 A.2d 718 (1985) (same); *Rambo v. McCulloch,* 90 Or. App. 392, 752 P.2d 347 (1988) (instruction proper in rear-end accident caused by sudden jamming of brake lining, depriving defendant of ability to control vehicle).

One of the more careful analyses of the subject was made in *McKee v. Evans,* 380 Pa.Super. 120, 551 A.2d 260 (1988). The Pennsylvania court found that the instruction had been improperly given in favor of a driver involved in a ten-mile pursuit. *Id. at 158,* 551 A.2d at 279. The court concluded that the instruction was not favored and should be given only in those cases in which evidence showed that (1) the party seeking the instruction had not been negligent prior to the emergency, (2) the emergency had come about suddenly and without warning, and (3) reaction to the emergency was spontaneous, without time for reflection. *Id.* at 158–61, 279–80. While these factors are certainly not all inclusive, we believe they help describe the situations to which the instruction should be confined.

## B. Resolution

■ Having noted that the instruction is but a factor to be considered in determining reasonable care, is subsumed within the general concept of negligence, is a matter of argument rather than a principle of law, and can single out and unduly emphasize one factor and thus mislead a jury, we join those courts that have discouraged use of the instruction and urge our trial judges to give it only in the rare case. The instruction should be confined to the case in which the emergency is not of the routine sort produced by the impending accident but arises from events the driver could not be expected to anticipate.

We do not, however, join those courts that absolutely forbid use of the instruction. There are cases in which the instruction may be useful or may help to explain the need to consider a sudden emergency and the consequent reflexive actions of a party when determining reasonable care. We believe, however, that in those few cases in which the instruction is given, it would be important to explain that the existence of a sudden emergency and reaction to it are only some of the factors to be considered in determining what is reasonable conduct under the circumstances. *See Young v. Clark,* 814 P.2d 364, 367–69 (Colo.1991). Even though a judge may exercise his discretion and give a sudden emergency instruction in a particular case, it will rarely, if ever, be error to refuse to give it.

■ Applying these principles to the case at bench, we conclude that the trial judge did not abuse his discretion in giving the instruction. This is a case in which there was no evidence of antecedent negligence by Knutson, in whose favor the instruction was given. In light of the testimony of the various witnesses, there was no question about the existence of an emergency. Knutson was faced with a situation not ordinarily to be anticipated and one of imminent peril when Magnusson pulled out of the shopping center and suddenly turned toward him in the wrong lane of traffic. Finally, Knutson's reaction— swerving across the center line into the path of Myhaver's oncoming vehicle—was probably both reflexive in nature and the type of conduct that absent a sudden emergency would almost automatically be found as negligence, if not negligence per se. *See Zancanaro v. Hopper,* 79 Ariz. 207, 212, 286 P.2d 205, 210 (1955); A.R.S. §§ 28–721, 28–726. Given these facts, the real and only issue was whether Knutson's conduct was reasonable under the circumstances of the emergency. We believe, therefore, the trial judge had discretion to instruct on the sudden emergency as a factor in the determination of negligence.

### CONCLUSION

For the foregoing reasons, we approve the court of appeals' decision and affirm the judgment of the trial court.

JONES, V.C.J., and MOELLER and MARTONE, JJ., concur.

ZLAKET, Chief Justice, specially concurring.

I am puzzled by the majority's desire to perpetuate a jury instruction that is admittedly of marginal value but has such enor-

mous potential for harm. In my opinion, today's decision prolongs a decades-old controversy surrounding the "sudden emergency" doctrine and provides little added guidance to Arizona's trial judges. While my colleagues' attempt to narrow the use of the instruction is laudable, I would eliminate it altogether and bring to a close the chapter on this anomalous subject.

To say that the sudden emergency instruction should be confined to "the case in which the emergency is not of the routine sort produced by the impending accident but arises from events the driver could not be expected to anticipate," *ante* at 291, 942 P.2d at 450, is not helpful. In fact, while that language does little more than track the instruction itself, it is likely to spark a new round of endless debate about the differences between the "routine" and the unexpected.

Moreover, today's resolution fails to address the essential flaw in the instruction—that it overemphasizes and tends to accord independent status to what is but one of many elements in every negligence analysis. If drivers cannot "be expected to anticipate" certain events, they are by definition free from negligence. Standard instructions, particularly when supplemented by oral argument of counsel, should be more than sufficient to convey this idea without having a trial judge specifically suggest that one party might be excused because he or she faced an "emergency."

Much has been written on this subject. Nothing more need be said. I simply agree with those jurisdictions that have discarded the sudden emergency instruction as unwise and unnecessary. I am also unpersuaded by the majority's attempt to distinguish this charge from the "sudden appearance" instruction that we rejected in *Rosen.*

However, because the instruction in question has not yet been specifically disapproved in Arizona, and appears to have been harmless under the particular facts of this case, I am unwilling to say that the trial judge abused his discretion. I therefore concur in the result.