# CHARLESTON.

HARRISON ENGINEERING & CONSTRUCTION CO. V. THE DIRECTOR
GENERAL OF RAILROADS.

Submitted April 20, 1920.    Decided April 27, 1920.

1. RAILROADS—*Crossings Reasonably Safe Required.*

    It is the duty of a railroad company to provide crossings rea-
    sonably safe for the passage of travel thereover in the usual
    mode at those points where the public highways cross its
    tracks.  (p. 274).

2. NEGLIGENCE—*Contributory Negligence in Emergency Question
    for Jury.*

    In case of sudden and unexpected danger necessitating imme-
    diate decision as to which of two or more means of escape will
    be adopted, the law makes allowance for errors of judgment,
    and even though it appears that a resulting accident could have
    been avoided if the party so placed in peril, or in danger, had
    pursued another course, it will ordinarily be a question for the
    jury whether under the circumstances his failure to so pursue
    such different course renders him guilty of contributory negli-
    gence so as to bar a recovery.  (p. 277).

Appeal from Circuit Court, McDowell County.

Action by the Harrison Engineering & Construction Company
against the Director General of Railroads.  Judgment for de-
fendant, and plaintiff brings error.

*Reversed, verdict set aside, remanded.*

*G. W. Howard,* for plaintiff in error.
*F. M. Rivinus* and *Sale & Tucker,* for defendant in error.

RITZ, JUDGE:

This is a suit for the purpose of recovering damages for injury
done to a truck owned by the plaintiff by being struck at a rail-
road crossing by a train of cars operated by the defendant over
the Norfolk & Western Railway Company in McDowell county.
The declaration charges that the defendant negligently failed to
keep the said road crossing in a reasonably safe condition for the
passage of vehicles thereover; that the defendant's agents and
servants in charge of the train which hit the plaintiff's truck

failed to sound the alarm required by law when approaching said crossing, and also failed to keep a sufficient lookout on the front end of said train as the same was approaching said crossing, said train being composed of fourteen or fifteen cars being shoved in front of the locomotive. The trial resulted in the court below directing a verdict in favor of the defendant and rendering a judgment of *nil capiat* thereon, and it is to review this judgment that this writ of error is prosecuted.

The facts shown by the evidence, so far as they are material to the disposition of the errors assigned, are that the plaintiff was engaged in constructing roads in the county of McDowell under a contract with the county court of that county, and the truck which was destroyed was being used by it in that service. At the place of the accident one of the regular highways of the county of McDowell crosses the railroad tracks. The improvement of this road by the county court necessitated some change in the road crossing in order to adjust the same to the improved road. While the improvement of the road was going on, which was the case at the time of the accident, a large part of the public traffic was diverted from this highway to another, but such travel as went to the town of Kimball was still allowed to use this road, and the plaintiff also used this road in hauling its material for the road construction. The defendant's foreman, in order to properly make the changes in the crossing which were necessary for the reason aforesaid, constructed a temporary crossing at a point near to the regular crossing, with a view of diverting the traffic around the regular crossing while he was changing the same. The driver of the plaintiff in charge of this truck had hauled a load of cement from one of defendant's cars to its mixing plant, and was returning with a view of getting another load to be taken to the same place. It appears that this is the first time the plaintiff's driver attempted to use this temporary crossing. On this occasion he drove upon the same and when his front wheels got between the rails and the rear wheels near to the first rail, over which the front wheels had passed, it stuck, as he says, because the material used in the crossing was so soft and infirm that it would not hold the wheels of his truck to which the power was applied so as to provide force sufficient

to propel the truck across the track, but the wheels simply revolved in the material without advancing the truck. The railroad in the direction from which the train which hit the truck approached was on a very sharp curve, so that anyone on a car or engine approaching the crossing from that direction could not see the crossing at a distance of more than 260 to 275 feet, nor could anyone at the crossing, or going upon the crossing, see the railroad in that direction for any great distance. It is shown beyond question that at the time plaintiff's driver went upon the track there was no train in sight. Several of the witnesses state that he was on the track before being struck for from three to five minutes, during all of which time he was sedulously endeavoring to get the truck forward, but without success. The witnesses testified that after he had been upon the track for the time above stated a train appeared from around the curve consisting of a locomotive with fourteen or fifteen cars in front of it, the engineer, of course, being unable to see the crossing at the time the front of his train came around the curve. Witnesses testified that no alarm was given by the locomotive within the statutory distance before reaching this crossing. It appears from the testimony that there was a flagman or brakeman upon this train, some of the witnesses placing him upon the first car, and some upon the second or third car from the front of the train, and that as soon as he came in sight of plaintiff's truck upon the crossing he began to signal the engineer to stop, but that the speed of the train did not lessen until within a very few feet of the truck when it began to slow down, and stopped within two car lengths after it hit the truck and destroyed the same. It is shown by one of the witnesses that the flagman on the front end of the train was not in sight of the engineer operating the locomotive, but it does not appear that there were not other brakemen on the train to communicate the signal to stop to the engineer, nor is it shown by any direct evidence that the train could have been stopped under the circumstances then existing so as to prevent hitting the plaintiff's truck had the engineer promptly received the signal. The plaintiff insists, however, that both of these facts appear inferentially, because the train did not slow down until within a few feet of the crossing

and stopped in two car lengths after passing it, arguing from this that the engineer did not receive the signal to stop until the train began to slow down, and this being true, he having stopped the same within a very short distance, proves that had he received the signal at the time the flagman saw the truck upon the crossing he could have stopped within ample time to have prevented hitting it. The plaintiff insists that under the evidence it has shown negligence on the part of the defendant in not providing a reasonably safe crossing, in not sounding the alarm required by law upon the approach of this train to that crossing, and in not keeping an effective lookout upon the front of this train so approaching the crossing with the cars in front of the locomotive, or at least that the evidence upon these questions was such as required the case to go to the jury for their judgment upon the same.

That it was the duty of the defendant to keep this crossing in a reasonably safe condition for the passage of vehicles thereover cannot be doubted. In the case of *Roberts* v. *Baltimore & Ohio R. R. Co.,* 72 W. Va., 370, it was held that while the railroad company was not required to exercise the highest degree of care to maintain railroad crossings in a safe condition, it was required to use the same degree of ordinary care to this end as is required of county courts in relation to the public highways, or municipal corporations in regard to public streets, and that is to maintain the same in reasonably safe condition for the character of travel for which they are used in the ordinary modes by day or night. That the plaintiff's truck stuck upon this crossing is beyond question, and it seems to be reasonably clear that the cause of this trouble was the crossing was made of such loose material that the wheels of the truck to which the power was applied would revolve and displace the material instead of advancing the truck. Can it be said as matter of law that to make a crossing of such material under the circumstances is a reasonable provision for travel? Of course it must be borne in mind that this crossing was only temporary, and was intended to be used only while the regular crossing was being permanently adjusted to the improved road, and the defendant would not be expected to make it of that permanent character which would

86 W. Va.

be required in the construction of a crossing to be used permanently. But even the provision made for this temporary purpose must be such as that it can be said that it was reasonably well adapted to the use of the travel which would have occasion to pass over the same, and it cannot be said that this temporary crossing was in that condition. To say the least of it, the jury should have been allowed to pass upon that question under the circumstances.

But the defendant urges that the plaintiff's driver was negligent in going upon this crossing without looking for the approach of a train. In his testimony the driver says he did look, and that there was no train in sight, but in a statement which he signed previous to the trial he says that he did not look prior to driving upon the crossing. It matters little as matter of fact whether he looked for an approaching train or not, for the evidence of other witnesses puts it beyond doubt that the train was not in sight at the time he went upon the crossing, nor did it appear for some little time after he went thereon, and while he was exerting himself to get the truck off of the crossing to a place of safety, so that we cannot say that the plaintiff's driver was guilty of any negligence in going upon this crossing under the circumstances. It was provided by the defendant to be used while the regular crossing was being repaired, and the plaintiff's driver, not knowing that it was unsafe for the purpose, had a right to assume that the defendant had made reasonably suitable provision for crossing the track at this point, and there being no train in sight at that time it was not negligence for him to attempt to cross by the means provided by the defendant for that purpose.

The witnesses introduced testify that no alarm was given by the engineer of the approach of this train before it reached the crossing, as required by statute. This can make little difference in this case, for it clearly appears that the plaintiff's truck was upon the crossing before the defendant's engineer would be required to give such an alarm, and the fact that it was not given could have no connection with the driving of the truck upon the track. The only connection between the failure to give the alarm and the accident is that if the alarm had been given the plaintiff's driver, thus being warned of the approach of a train, might have resorted to some other means of getting the truck off the track,

such as reversing the same and attempting to move it in the opposite direction from that in which he was going, and it may be that the failure to give the alarm is a circumstance tending to excuse him from backing the truck off of the track if it could have been removed therefrom in that way.

On the question of whether or not the defendant kept a sufficient lookout upon this train as it approached this crossing, the evidence shows that there was such a lookout upon the front of the train, but the argument is that this lookout was not sufficient for the reason that the engineer could not see any signal given by the brakeman on the front of the train because of the curve in the track, and it is contended that the evidence fairly discloses that he did not in fact see the signal when it was first given, nor was it communicated to him, because the train did not slow down until within a few feet of the crossing, and that after it did begin to slow down it stopped within a very few feet. The evidence is that the train was going up grade at a very slow rate of speed, and presumptively it could have been stopped within a short distance, but there is no evidence except the inference which arises from the fact that the train did stop within a very short distance after it began to reduce speed, that it could have been stopped before hitting the truck after the crossing came in view of the brakeman on the front car, nor is there any evidence that the signal given by the brakeman on the front car was not communicated immediately to the engineer by other employes stationed at other points upon the train. The fact that the train did not begin to slow down until it was within a very short distance of the crossing cannot be said to prove that the engineer did not receive the signal at the time it was given, for it must be borne in mind that after receiving the signal it would require a little time for the engineer to adjust the apparatus so that the same would begin to operate to reduce the speed of the train, and while he was making these adjustments the train of course would be moving forward, so that it may have been that the distance covered by the train before the speed of the same was reduced was because of the fact that it required this time for the engineer to adjust the machinery so as to make it operate to reduce the speed of the train instead of his failure to receive the signal to stop. In order to make this complaint

good plaintiff would have to show not only that the engineer could not see the signal given by the brakeman on the front of the train at the time it was given, but that there was no one else upon the train to communicate it to him, and further that if it had been communicated to him promptly the train could have been stopped and the accident avoided. If evidence to show these facts had been introduced then the plaintiff would have made out a case showing that the defendant had the last clear chance to avoid the accident.

Counsel for the defendant argue that conceding that the defendant was negligent in not providing a reasonably safe crossing, and that the plaintiff's driver was not negligent in going upon the same under the circumstances, yet the defendant cannot be held liable for the resulting damage to the plaintiff's truck because the evidence shows that the plaintiff's driver had the last clear chance to avoid the accident after the danger became imminent, for the reason that he says that he could have backed the truck off of the track and avoided injury to it. The driver's evidence upon this question is not entirely clear. He says in one place that he could have backed the truck off the track, but again he says that he did not know whether this result could have been accomplished or not for the reason that he had not tried it. Construing it altogether it may mean no more than that assuming that the truck would move backwards it could have been backed off and the accident avoided, but from the fact that he did not try to move it in that direction he could not tell whether it would respond when the machinery was adjusted to so operate any better than when adjusted to operate in the opposite direction. At any rate he says that he did not try to back the truck off the track, and assuming that it clearly appears that if he had attempted to do this as soon as the danger became imminent it could have been accomplished and the accident avoided, can it be said as matter of law that his failure to do so under the circumstances constitutes negligence? It must be borne in mind that when one is called upon to act suddenly and in an emergency, such as was presented here, the law makes allowance for errors in judgment and does not exact of him the same cool, calm deliberation which would be expected were he acting in a situation not fraught with immediate danger.

*Roberts* v. *R. R. Co.,* 72 W. Va. 370; *Bond* v. *R. R. Co.,* 82 W. Va. 557. So that we think it may be said in this case that even assuming that it does appear that this truck could have been backed off the track after the train came in view, and the accident avoided, it cannot be said that the driver was negligent as matter of law in not having done so. Because of the condition which confronted him at the time it might be assumed that he would become confused, and that his mental faculties would not uneeringly direct his action toward that course most conducive to the safety of himself and the property of his employer. This being so, we are of opinion that this question should have been submitted to the jury, and if they believed that the driver's conduct was not negligent under the circumstances which surrounded him at the time, the plaintiff would be entitled to recover, if they further believed that the temporary crossing provided by the defendant was not reasonably safe for the purpose for which it was intended.

We, therefore, reverse the judgment of the circuit court of McDowell county, set aside the verdict of the jury, and remand the cause for a new trial.

                              *Reversed, verdict set aside, remanded.*