540 S.E.2d 903

Ray Junior MORAN and Mary V. Moran, Husband and Wife, Appellants,

v.

ATHA TRUCKING, INC., A Corporation; James A. Fornash; Chuck Kirkpatrick; and E. & S. Coal Company, Inc., Appellees.

Deborah A. Fletcher, Appellant,

v.

Raymond R. Sias, Appellee.

Nos. 24012, 24081.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 14, 1997.

Decided Dec. 5, 1997.

Concurring Opinion of Justice Starcher Jan. 16, 2001.

Jacques R. Williams, Esq., Hamstead, Hamstead & Williams, Morgantown, West Virginia, Attorney for the Morans.

James M. Wilson, Esq., Ancil G. Ramey, Esq., Steptoe & Johnson, Clarksburg, West Virginia, Attorneys for Atha Trucking, Inc. and Fornash.

Alex L. Solomon, Esq., Solomon & Solomon, Morgantown, West Virginia, Attorney for Kirkpatrick and E. & S. Coal Company, Inc.

Robert A. Taylor, Esq., David L. Stuart, Esq., Masters & Taylor, Charleston, West Virginia, Attorneys for Deborah A. Fletcher.

Andrew L. Paternostro, Esq., Rose & Atkinson, Charleston, West Virginia, Attorney for Raymond R. Sias.

1. The appellants proceeded in this case under Rule 4A of the Rules of Appellate Procedure. Rule 4A(a) states "[i]n order to provide an inexpensive and expeditious method of appeal, a petitioner may file his petition without the transcript of testimony taken in the lower court." Therefore, we are dependent upon the parties' briefs filed herein, as well as depositions of several of the parties, in ascertaining the relevant facts.

**MAYNARD, Justice:**

The two cases before us were consolidated for argument and opinion. In the first case, the appellants, Ray Junior Moran and Mary V. Moran, appeal the September 13, 1996 order of the circuit court of Harrison County denying their motion for a new trial which was based exclusively on the circuit court's refusal to give a sudden emergency instruction. In the second case, the appellant, Deborah Fletcher, appeals the November 1, 1995 order of the circuit court of Kanawha County denying her motion for a new trial or, in the alternative, for judgment notwithstanding the verdict, on the grounds, *inter alia*, that the giving of a sudden emergency instruction on behalf of the appellee, Raymond Sias, was error.

In both cases we are summoned to decide whether the doctrine of sudden emergency continues to be viable under our comparative negligence scheme and, if so, what form the doctrine will now take.

## I.

## FACTS

### A.

### *Moran v. Atha Trucking*

The facts in the *Moran* case are as follows.[1] Shortly before midnight on February 11, 1994, appellant Ray Moran left the coal mine where he worked in Harrison County, West Virginia and was driving home on the two lane highway that provides access to the mine. Driving conditions that night were treacherous due to a freezing rain that made the road extremely slippery. Moran had not traveled far when he looked ahead and saw what he perceived to be two stationary coal trucks, parked side by side, each blocking its respective lane of travel. Moran was apparently about 300 feet from the coal trucks when he first saw them.[2] The coal truck in

2. In his deposition, Moran estimated that when he first saw the coal trucks he was about 150 feet from them. Appellee James A. Fornash, the driver of the truck owned by appellee Atha Trucking, Inc., stated in his deposition that Moran's vehicle began to slide when it was about three to four hundred feet from his truck. In his petition to this Court, however, Moran states that his automobile slid up to 275 feet on the ice prior to

Moran's lane of travel was owned by appellee E. & S. Trucking Company and operated by appellee Chuck Kirkpatrick. The truck in the other lane, facing Moran, was owned by appellee Atha Trucking, Inc. and operated by appellee James A. Fornash. Whether and to what degree these two coal trucks were blocking the roadway were in dispute at trial.[3]

Moran testified that upon seeing the trucks blocking the roadway he "panicked" and attempted to decrease the speed of his vehicle by applying the brakes and shifting the automatic transmission of his front-wheel drive automobile into a lower gear. This resulted in Moran's vehicle sliding uncontrollably down the roadway, crossing the center line, and colliding into the stationary Atha truck.

As a result of this collision, Moran and his wife filed a personal injury action against the appellees. Following a three day jury trial, the jury assessed Moran with one hundred percent of the fault. The appellants moved for a new trial asserting that they were prejudiced by the circuit court's failure to instruct the jury on the sudden emergency doctrine. By order of September 13, 1996, the circuit court denied the appellants' motion. The sole assignment of error presented to this Court is that the circuit court erred in refusing to instruct the jury concerning the doctrine of sudden emergency.

### B.

### *Fletcher v. Sias*

In the second case, the appellant, Deborah Fletcher, left her home, located off the northbound lanes of Greenbrier Street in Charleston, West Virginia shortly before 6:00 a.m. on December 8, 1993 to catch a ride to work. Fletcher crossed Greenbrier Street and waited on her ride on the southbound side of the street. When her ride did not show, Fletcher decided to return to her house in order to call her place of employment to inform her manager that she would be late for work. Fletcher proceeded to recross Greenbrier Street. She made it safely across the southbound lanes of Greenbrier Street, but was hit by a vehicle driven by the appellee, Raymond Sias, as she attempted to cross the northbound lanes.

After a short trial, the jury found Fletcher to be sixty percent at fault and Sias to be forty percent at fault. Fletcher moved for a new trial or, in the alternative, for a judgment notwithstanding the verdict, asserting, in part, that the giving of a sudden emergency instruction under the facts of this case was error and that the sudden emergency doctrine no longer represents the law in West Virginia. The circuit court denied Fletcher's motion by order dated November 1, 1995. Fletcher now asks this Court to determine whether it was reversible error for the circuit court to give a sudden emergency instruction under the facts of this case, and whether the sudden emergency doctrine remains the law in West Virginia.

### II.

### Standard of Review

At the outset, we note that "[a] trial court ... has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law." Syllabus Point 4, in part, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). "Whether facts are sufficient to justify the delivery of a particular instruction is reviewed by this Court under an abuse of discretion standard." Syllabus Point 12, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994). Upon review, "[i]t will be presumed that a trial court acted correctly in giving or in refusing to give instructions to the jury, unless it appears from the record in the case that the instructions given were prejudicially erroneous or that the instructions refused were correct and should have been given." Syllabus Point 1, *State v. Turner*, 137 W.Va. 122, 70 S.E.2d 249 (1952). This Court has recognized, however, that "[a]n instruction should

---

colliding with the Atha coal truck. In its response to the petition, Atha notes, as a fact *not* in dispute that the "plaintiff/driver admitted that he 'panicked' when he saw the coal trucks about *300 feet*, the length of a football field, ahead of him[.]" (Emphasis added).

3. The appellants presented evidence that the coal trucks were side by side and were blocking the roadway. The appellees presented evidence that the trucks were actually about twenty yards apart and there was sufficient room between the two coal trucks for vehicles to pass between them.

not be given when there is no evidence tending to prove the theory upon which the instruction is based." Syllabus Point 4, *Hovermale v. Berkeley Springs Moose Lodge No. 1483*, 165 W.Va. 689, 271 S.E.2d 335 (1980).

## III.

## DISCUSSION

### A.

The aged sudden emergency doctrine was born in 1816 England in the case of *Jones v. Boyce*, 1 Stark. 493, 171 Eng. Rep. 540 (N.P. 1816).[4] In that case, the plaintiff brought an action against a coach proprietor for an injury he suffered after feeling compelled to leap from the coach due to the negligent manner in which the coach was being driven. The court's charge to the jury was, in part, as follows:

> To enable the plaintiff to sustain the action, it is not necessary that he should have been thrown off the coach; it is sufficient if he was placed by the misconduct of the defendant in such a situation as obliged him to adopt the alternative of a dangerous leap, or to remain at certain peril; if that position was occasioned by the default of the defendant, the action may be supported. On the other hand, if the plaintiff's act resulted from a rash apprehension of danger, which did not exist, and the injury which he sustained is to be attributed to rashness and imprudence, he is not

entitled to recover. . . . [D]id this circumstance create a necessity for what he did, and did he use proper caution and prudence in extricating himself from the apparently impending peril.

*Jones*, 171 Eng. Rep. at 541.[5]

The sudden emergency doctrine was transported to the United States, making its first appearance in the case of *Stokes v. Saltonstall*, 38 U.S. (13 Pet.) 181, 10 L.Ed. 115 (1839) which also involved a frightened leap from a coach.[6] In both *Jones* and *Stokes*, "the doctrine was invoked by the plaintiff to show that his conduct did not amount to contributory negligence, and this was true of almost all cases in the infant stages of the doctrine."[7]

### B.

Interestingly, the first West Virginia case found by this Court to discuss the sudden emergency doctrine, *Haney v. Pittsburgh, C., C. & St. L. Ry. Co.*, 38 W.Va. 570, 18 S.E. 748 (1893), *overruled by Jackson v. Norfolk & W.R. Co.*, 43 W.Va. 380, 27 S.E. 278 (1897), concerned a plaintiff's decedent who jumped from the caboose of a construction train in order to avoid the effects of an imminent collision with another train.[8] In its discussion of whether the plaintiff's decedent was guilty of contributory negligence, this Court stated:

> In *Warth v. Jackson County Court*, 71 W.Va. 184, 76 S.E. 420 (1912), the plaintiff was attempting to get out of a buggy that was turning over when the buggy suddenly jerked causing the plaintiff to be thrown to the ground. The defendant claimed that the plaintiff was negligent in trying to get out of the buggy. This Court concluded, however, that "[o]ne who places another in peril can not complain if he does not exercise the best judgment in extricating himself from such peril." *Id.*, 71 W.Va. at 189, 76 S.E. at 422 (citation omitted). Finally, *Keatley v. Hanna Chevrolet Co.*, 121 W.Va. 669, 6 S.E.2d 1 (1939) concerned a plaintiff who attempted to jump from an automobile that was skidding uncontrollably on an icy road. This Court found that the case presented "a striking example for the application of [the sudden emergency] rule," and concluded "[a]s a matter of law, it can safely be said that under the harrowing and perilous circumstances in which [the plaintiff] found herself, her conduct was not such negligence as to preclude recovery." *Id.*, 121 W.Va. at 677, 6 S.E.2d at 5.

---

**4.** Virgil G. Gillespie, Comment, *The Sudden Emergency Doctrine*, 36 Mississippi L.J. 392, 393 (1965).

**5.** *Id.* at 394.

**6.** *Id.*

**7.** *Id.*

**8.** This Court has on several occasions utilized the sudden emergency doctrine in situations where the plaintiff found it necessary to leap from a conveyance in order to avoid injury. In *Mannon v. Camden Interstate Ry. Co.*, 56 W.Va. 554, 555, 49 S.E. 450, 451 (1904) the plaintiff, "an unsophisticated country boy from the state of Ohio," became "excited and alarmed" when the trolley wire on the street trolley car on which he was a passenger "parted," causing the plaintiff to leap from the car. This Court determined that whether the plaintiff's behavior was justified in these circumstances was a question of fact for the jury.

The question is, what did self-preservation prompt? Was he to wait until the crash came, or was he to try and escape the shock, the scalding steam, and the flying splinters which are the usual accompaniment of such collisions. It is true that by remaining quiet he might have escaped injury as others did; but what was the natural impulse, and what would the great majority of men have done, however calm may have been their nervous temperament, under the same circumstances? There can be but one answer,—they would have made every effort to escape. Now, what does the law require of a man thus situated? Shearman & Redfield on the Law of Negligence, (volume 1, § 89,) under the heading, "Effect of Mistaken Judgment under Sudden Alarm," states the law as follows: "In judging of the care exercised by the plaintiff, reasonable allowance is always made for the circumstances of the case; and if the plaintiff is suddenly put into peril, without having sufficient time to consider all the circumstances, he is excusable for omitting some precautions, or making an unwise choice, under the disturbing influence, although, if his mind had been clear, he ought to have done otherwise, especially if his peril is caused by the defendant's fault. If one is placed by the negligence of another in such a position that he is compelled to choose instantly, in the face of grave and apparent peril, between two hazards, and he makes such a choice as a person of ordinary prudence, placed in such a position, might make, the fact that, if he had chosen the other hazard, he would have escaped injury, is of no importance."

*Haney*, 38 W.Va. at 580–81, 18 S.E. at 752.

Down through the last century, this Court has revisited the sudden emergency doctrine in numerous cases. At first the doctrine served as an aid to plaintiffs by mitigating the harsh effects of contributory negligence. *See Mannon, supra; Warth, supra; Keatley, supra; Roberts v. Baltimore & O.R. Co.,* 72 W.Va. 370, 78 S.E. 357 (1913); *Harrison Engineering & Construction Co. v. Director General of Railroads,* 86 W.Va. 271, 103 S.E. 355 (1920). Before long, however, defendants embraced the sudden emergency doctrine. *See Chaney v. Moore,* 101 W.Va. 621,

134 S.E. 204 (1926); *Lawson v. Dye,* 106 W.Va. 494, 145 S.E. 817 (1928); *Robertson v. Hobson,* 114 W.Va. 236, 171 S.E. 745 (1933); *Cline v. Christie,* 117 W.Va. 192, 184 S.E. 854 (1936). Although the majority of our sudden emergency cases have involved automobiles, there have been cases concerning other types of accidents. *See Menafee v. Monongahela Ry. Co.,* 107 W.Va. 245, 148 S.E. 109 (1929) (the plaintiff was struck by a lump of coal which fell from a moving train as he was about to ascend the steps of the tipple); *State ex rel. Cox v. Sims,* 138 W.Va. 482, 77 S.E.2d 151 (1953) (plaintiff brought action against the State Road Commission for property loss caused by a garage fire).

■ In Syllabus Point 3 of *Poe v. Pittman,* 150 W.Va. 179, 144 S.E.2d 671 (1965), this Court succinctly stated our modern sudden emergency doctrine.

A person in a sudden emergency, not created in whole or in part by his own negligence, who acts according to his best judgment or who, because of insufficient time for reflection, fails to act in the most judicious manner, is not guilty of negligence if he exercises the degree of care which would be exercised by a reasonably prudent person in like circumstances.

Further,

In a civil action in which a party relies on the sudden emergency doctrine and in which the evidence concerning that issue is conflicting or where such evidence, though undisputed, is such that different inferences reasonably may be drawn therefrom, it is for the jury to determine whether such party was confronted with a sudden emergency, the nature and extent of the emergency, whether the emergency was created in whole or in part by the party relying upon it in justification of his conduct and whether he in the emergency conducted himself as a reasonably prudent person would have conducted himself in the same or like circumstances.

Syllabus Point 4, *Poe, supra.*

Situations in which this Court has found a sudden emergency instruction to be proper include where a motorist failed to back his vehicle off a negligently maintained railroad

crossing when he was unable to move forward and was hit by a train, *Harrison Engineering, supra;* motorists suddenly confronted with an oncoming automobile in their lane of traffic, *Lawson, supra; Gilbert v. Lewisburg Ice Cream Co.,* 117 W.Va. 107, 184 S.E. 244 (1936); *Schade v. Smith,* 117 W.Va. 703, 188 S.E. 114 (1936); *States v. Riss & Co.,* 139 W.Va. 1, 80 S.E.2d 9 (1953); *Mulroy v. Cooperative Transit Company,* 142 W.Va. 165, 95 S.E.2d 63 (1956); pedestrian darted in front of motorist's vehicle, *Meadows v. Stickler,* 144 W.Va. 644, 110 S.E.2d 380 (1959); automobile brakes failed, *Spurlin v. Nardo,* 145 W.Va. 408, 114 S.E.2d 913 (1960); motorist's vehicle slid uncontrollably due to ice on the roadway, *White v. Lock,* 175 W.Va. 227, 332 S.E.2d 240 (1985); and accelerator spring on tractor broke causing the engine to accelerate and pick up speed, *Snyder v. Keckler,* 175 W.Va. 268, 332 S.E.2d 281 (1985) (*but see Henthorn v. Long,* 146 W.Va. 636, 122 S.E.2d 186 (1961) where sudden emergency instruction was improperly given when a motorist knew his brakes were defective).

As noted above, the instant cases present us with the issue of whether the sudden emergency doctrine remains viable under our present comparative negligence scheme. In *Moran,* the circuit court apparently refused to instruct the jury on the sudden emergency doctrine reasoning that it is no longer the law in West Virginia. In *Fletcher,* the plaintiff asserts that it was reversible error to give a sudden emergency instruction, again, because it is no longer the law. We now intend to settle this question.

### C.

In the landmark case of *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979), this Court adopted our current comparative negligence rule. *Bradley* concerned two cases, consolidated on appeal, in which the plaintiffs sought comparative negligence instructions in their respective cases in order to avoid the defense of contributory negligence. In each case, the trial court rejected the requested instruction, giving a contributory negligence instruction instead, and in each case the jury returned a verdict for the defendant. On appeal, this Court was asked "to re-examine and ameliorate the common law doctrine of contributory negligence." *Bradley,* 163 W.Va. at 333, 256 S.E.2d at 881. In its discussion of contributory negligence, the Court stated:

> There is an almost universal dissatisfaction among leading scholars of tort law with the harshness of the doctrine of contributory negligence. Neither intensive scholarship nor complex legal arguments need be advanced to demonstrate its strictness. A plaintiff can, if the jury is faithful to the contributory negligence instruction it receives, be barred from recovery if his negligence "contributed in the slightest degree" to the accident. Thus, our system of jurisprudence, while based on concepts of justice and fair play, contains an anomaly in which the slightest negligence of a plaintiff precludes any recovery and thereby excuses the defendant from the consequences of all of his negligence, however great it may be.

*Id.,* 163 W.Va. at 335, 256 S.E.2d at 882 (footnote and citations omitted).

In the process of reaching a solution, this Court reviewed the statutes and case law of other states, the writings of legal commentators, as well as the merits of the pure comparative negligence position. Acknowledging that "[t]he history of the common law is one of gradual judicial development and adjustment of the case law to fit the changing conditions of society," *id.,* 163 W.Va. at 340, 256 S.E.2d at 884 (footnote omitted), this Court concluded:

> Our present judicial rule of contributory negligence is therefore modified to provide that a party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident. To the extent that our prior contributory negligence cases are inconsistent with this rule, they are overruled.

*Id.,* 163 W.Va. at 342, 256 S.E.2d at 885 (footnote omitted).

Of course, the adoption of the comparative negligence rule meant that some well-settled tort doctrines developed in response to contributory negligence must now be modified or fall by the wayside altogether. For exam-

ple, in *King v. Kayak Mfg. Corp.*, 182 W.Va. 276, 387 S.E.2d 511 (1989), this Court had the opportunity to consider the continued vitality of the assumption of risk doctrine in light of our adoption of comparative negligence. This Court concluded:

> [W]e retain the defense of assumption of risk, but modify it to bring it in line with the doctrine of comparative contributory negligence set out in *Bradley.* We hold that a plaintiff is not barred from recovery by the doctrine of assumption of risk unless his degree of fault arising therefrom equals or exceeds the combined fault or negligence of the other parties to the accident. As in the case of comparative contributory negligence under *Bradley,* where assumption of risk has been shown, the instructions should only require that the plaintiff's degree of fault be ascertained.

*King,* 182 W.Va. at 282, 387 S.E.2d at 517 (footnotes omitted).

In *Ratlief v. Yokum,* 167 W.Va. 779, 280 S.E.2d 584 (1981), this Court abolished the doctrine of last clear chance. The Court recognized that "[t]he doctrine of last clear chance was a judicial development to modify the harshness of the contributory negligence rule," *Ratlief,* Syllabus Point 3, and decided that,

> [t]he historical reason for the doctrine of last clear chance no longer exists since our adoption of comparative negligence. Furthermore, because of the doctrine's interrelationship with the issue of proximate cause and because of the confusion surrounding the application of the doctrine, we believe the better course would be to abolish the use of the doctrine of last clear chance for the plaintiff.

Syllabus Point 5, *Ratlief.*

Another doctrine that comes to mind here is the clear distance ahead rule which says that "it is negligence as a matter of law for one to drive an automobile at such a rate of speed that it cannot be stopped in time to avoid an obstruction plainly discernible within the driver's range of vision." Syllabus Point 6, in part, *Wager v. Sine,* 157 W.Va. 391, 201 S.E.2d 260 (1973). The parties do not raise the issue of the continued viability of the clear distance ahead doctrine, and we do not address it here. We do note, however, that the clear distance ahead rule has traditionally been limited by the sudden emergency doctrine.

> The general rule, requiring the driver of an automobile to maintain a speed sufficiently slow to have such control of it that he can stop it within the distance in which he can plainly see an obstruction of danger, does not apply to a case where a dangerous situation which he has no reason to expect suddenly appears in front of his car.

Syllabus Point 3, *Fleming v. Hartrick,* 100 W.Va. 714, 131 S.E. 558 (1926).

In the present cases we are urged by appellees Kirkpatrick and Atha and appellant Fletcher to abolish the sudden emergency doctrine. According to these parties, the doctrine was developed in response to contributory negligence and, like the last clear chance and unavoidable accident doctrines,[9] has no place in a comparative negligence scheme. They further contend that the sudden emergency doctrine is confusing and misleading because it generally instructs the jury that the proponent has a reduced standard of care. Finally, they assert that excusing the proponent of the doctrine of any liability forestalls any reasoned analysis of negligence, foreseeability, and proximate cause issues.

## D.

In determining the issue of the continued viability of the sudden emergency doctrine, we are benefited by having at our fingertips

---

**9.** In the syllabus point of *Hunter v. Johnson,* 178 W.Va. 383, 359 S.E.2d 611 (1987) this Court stated that "[a]n unavoidable accident instruction should not be given in a negligence case." Rather than finding the doctrine incompatible with comparative negligence, the Court reasoned,

> [t]here is little question [unavoidable accident instructions] are confusing and are designed to forestall any reasoned analysis of the negligence, foreseeability, and proximate cause issues which are the critical ingredients of most negligence cases. There is an increasing trend by courts which have analyzed the problem to conclude that the harm they engender far outweighs their usefulness.

*Hunter,* 178 W.Va. at 385, 359 S.E.2d at 613 (citations omitted).

a plethora of cases from other jurisdictions which confront this question. A review of these cases reveals that the sudden emergency doctrine has been the subject of increasing criticism in recent years.[10] This criticism has focused on whether the regular standard in negligence cases or some lower standard applies in emergency situations, and how the doctrine operates within the comparative negligence rule.[11] Courts have decided this issue in a number of ways. These range from abolishing the doctrine either generally or in automobile accident cases, restricting or discouraging its use, allowing but not requiring sudden emergency instructions, to outright retention of the doctrine.[12]

Many jurisdictions that have abandoned the sudden emergency doctrine have done so because they found sudden emergency instructions confusing and misleading or inconsistent with comparative negligence. For example, in *Knapp v. Stanford,* 392 So.2d 196, 198–199 (Miss.1980), the Supreme Court of Mississippi explained its decision to abolish the doctrine by stating:

> The hazard of relying on the doctrine of "sudden emergency" is the tendency to elevate its principles above what is required to be proven in a negligence action. Even the wording of a well-drawn instruction intimates that ordinary rules of negligence do not apply to the circumstances constituting the claimed "sudden emergency." Also it tends to confuse the principle of comparative negligence that is well ingrained in the jurisprudence of this State. The fallacy is pointed out in the instruction itself when after seemingly commenting on the evidence, the court instructs that the defendant should have "used the same degree of care that a reasonably prudent automobile driver would have used under the same or similar unusual circumstances." In this Court's opinion, the same rules of negligence should apply to all circumstances in a negligence action and these rules of procedure adequately provide for instructions on negligence.

*       *       *       *       *       *

We conclude, therefore, that the orderly disposal of negligence cases would be best served by applying uniform principles of negligence under all circumstances.

*See also, Simonson v. White,* 220 Mont. 14, 713 P.2d 983, 989 (1986) ("The instruction adds nothing to the law of negligence and serves only to leave an impression in the minds of the jurors that a driver is somehow excused from the ordinary standard of care because an emergency existed."); *McClymont v. Morgan,* 238 Neb. 390, 394, 470 N.W.2d 768, 771 (1991) ("The problem with giving the sudden emergency instruction is that it singles out one aspect of the general standard of care ..."); *Bass v. Williams,* 839 S.W.2d 559, 562–563 (Ky.App.1992) ("[T]he instruction has a quality to it that diminishes the duties of the defendant-driver ... and is in violation of the 'direct proportion to fault' concept ..."); *Dunleavy v. Miller,* 116 N.M. 353, 359, 862 P.2d 1212, 1218 (1993) ("[T]he instruction on sudden emergency is unnecessary and potentially confusing and serves to overemphasize one portion of the case."); and *Wiles v. Webb,* 329 Ark. 108, 116, 946 S.W.2d 685, 689 (1997) ("[T]he instruction confuses matters and skews the analysis in favor of the defendant. The result is that a defendant who did not in any way create the initial emergency circumstance but who is woefully negligent in other respects falls heir to a reduced standard of care."). Many jurisdictions that have abolished the sudden emergency doctrine have expressly stated that emergency circumstances are a proper matter for argument by counsel. *Zell v. Luthy,* 216 Kan. 697, 533 P.2d 1298 (1975); *McClymont v. Morgan, supra.*

For the same reasons noted above, some jurisdictions have chosen to discourage the use of sudden emergency instructions but have declined to completely abolish them. *See Finley v. Wiley,* 103 N.J.Super. 95, 103, 246 A.2d 715, 719 (1968) ("[W]e entertain grave doubt whether a sudden emergency charge should ever be given in an ordinary automobile accident case."); and *Myhaver v.*

---

**10.** Jeffrey F. Ghent, J.D., Annotation, *Modern Status of Sudden Emergency* Doctrine, 10 A.L.R.5th 680 (1993).

**11.** *Id.*

**12.** *Id.*

*Knutson,* 189 Ariz. 286, 942 P.2d 445, 450 (1997) ("Even though a judge may exercise his discretion and give a sudden emergency instruction in a particular case, it will rarely, if ever, be error to refuse to give it."); *See also Templeton v. Smith,* 88 Or.App. 266, 744 P.2d 1325 (1987); *Lyons v. Midnight Sun Transp. Services,* 928 P.2d 1202 (Alaska 1996).

Despite a recognition of the above-noted shortcomings of the sudden emergency doctrine, many courts have expressly decided to retain it. In *Young v. Clark,* 814 P.2d 364 (Colo.1991), the Supreme Court of Colorado declined to follow the lead of those jurisdictions that have abolished, or curtailed the use of, the sudden emergency doctrine. The court dismissed arguments that the doctrine is confusing or provides for a reduced standard of care, finding instead that a properly worded instruction serves to clarify issues for the jury's benefit. The court further found the doctrine to be consistent with that state's comparative negligence scheme.

> Consistent with this apportionment scheme, "[t]he sudden emergency instruction informs the jury ... how it is to allocate fault and apportion damages when the conduct of the person in question is that of an 'ordinarily prudent person' when faced with an emergency situation." *Compton v. Pletch,* 561 N.E.2d 803, 807 (Ind.App.1990). Significantly, the doctrine explains to the jury the standard of conduct expected of defendants *and* plaintiffs who act under the stress of an emergency situation. Finding no friction between the comparative negligence scheme of allocating fault and the sudden emergency doctrine, we conclude that abolishing the doctrine on this ground is unwarranted.

*Young,* 814 P.2d at 368 (citations omitted).

Likewise, in *Ebach v. Ralston,* 510 N.W.2d 604, 610 (N.D.1994), the Supreme Court of North Dakota concluded:

> [W]e believe carefully drafted instructions about a driver's standard of ordinary care under the circumstances of an emergency, coupled with instructions about the driver's standard of ordinary care before the emergency arose, give adequate guidance to the jury and latitude to the parties to argue that a sudden emergency may have been caused by the driver's lack of

prior care and should have been anticipated. Carefully drafted instructions about those situations direct a jury to assess fault for deviations from the negligence standard of ordinary care under emergency circumstances and are consistent with the assessment of fault under comparative negligence. (citation omitted).

*See also, Roth v. Hoxsie's Arco Service, Inc.,* 121 R.I. 428, 399 A.2d 1226 (1979); *Keeth v. Dept. of Public Safety and Transp.,* 618 So.2d 1154 (La.App. 2 Cir.1993); *Weiss v. Bal,* 501 N.W.2d 478 (Iowa 1993); and *Giles v. Smith,* 112 N.C.App. 508, 435 S.E.2d 832 (1993).

### E.

In light of the above discussion, we acknowledge several potential problems with the giving of sudden emergency instructions. First, as noted by several of the courts mentioned above, the instructions often place too much emphasis on the existence of an emergency situation, and its relevance to the case, to the detriment of the reasonable care standard. The giving of a poorly worded sudden emergency instruction could lead a jury to conclude that the presence of emergency circumstances alone absolves a party of all fault, thus disregarding the necessary analysis into the reasonableness of the party's conduct. Contributing to such confusion could be the fact that a separate instruction is given concerning the existence of a sudden emergency. Similarly, an improperly drafted instruction could lead the jury to believe that a party's conduct is to be judged by a reduced standard of care. For example, the refused instruction in *Moran* stated in part:

> West Virginia recognizes the sudden emergency doctrine, under which the driver of a motor vehicle is held to *a reduced or more lenient standard of care when suddenly confronted with an emergency situation.* A person in a sudden emergency, not created in whole or in part by his own negligence, who acts according to his best judgment or who, because of insufficient time to form a judgment, fails to act in the most judicious manner, is not guilty of actionable negligence if he exercises the care which would be exercised by a reason-

ably prudent person in like circumstances (emphasis added).

Although this instruction does state the correct standard of care in a sudden emergency situation, it also describes it as *a reduced or more lenient standard*, thus increasing the chances of jury confusion. It must be noted, however, that this language comes straight from *Ratlief v. Yokum*, 167 W.Va. 779, 782–783, 280 S.E.2d 584, 587 (1981) where this Court stated "we have recognized that the driver of an automobile is held to a reduced standard of care when he is suddenly confronted with unforeseeable or emergency circumstances."[13] Finally, we are concerned that the sudden emergency doctrine is overused, particularly in automobile accident cases. The sudden emergency doctrine is not applicable when a motorist is faced with nothing more than "an everyday traffic problem for which he should have been prepared." *Finley*, 246 A.2d at 719.

> [S]ome "emergencies" must be anticipated, and the actor must be prepared to meet them when he engages in an activity in which they are likely to arise. Thus, under present day traffic conditions, any driver of an automobile must be prepared for the sudden appearance of obstacles and persons in the highway, and of other vehicles at intersections, just as one who sees a child on the curb may be required to anticipate its sudden dash into the street, and his failure to act properly when they appear may be found to amount to negligence.[14] (Footnotes omitted).

In such situations when the "emergency" should have been anticipated, the ordinary rules of negligence are applicable and provide an adequate gauge by which to appraise a party's conduct. *See Finley, supra.*

Having recognized the problems surrounding the sudden emergency doctrine, and after a searching and extensive examination of the doctrine, however, we do not choose to abandon it. Instead, we believe that the doctrine can be clarified so as to mitigate its dangers while still providing a useful tool for juries in allocating fault in our comparative negligence scheme.

Although legal authorities appear to agree that the sudden emergency doctrine was originally developed to ameliorate the sometimes harsh results of contributory negligence, *see e.g. Dunleavy, supra*, it is not so closely related to the essence of the contributory negligence rule that it cannot operate under another system. "Although the doctrine came out of the contributory negligence regime, there is nothing about it which is inherently incompatible with a comparative fault system." *Lyons*, 928 P.2d at 1205. This is in contrast to the doctrine of last clear chance, for example, which, as noted above, this Court abolished in *Ratlief, supra*.

> The last clear chance doctrine presupposes that the actions of both parties were, to some degree, the cause of an accident and excuses the contributory negligence of one because the other party had an opportunity to avoid the accident but failed to do so. Thus, a party who otherwise would be completely barred from recovering because of his contributory negligence, is able to recover for the negligent action of the other party. Such a doctrine is closely related to the very essence of contributory negligence.
>
> The sudden emergency doctrine, on the other hand, has no such relationship. It relates to the standard of care required of the driver of a motor vehicle when confronted with a sudden emergency. The sudden emergency doctrine, unlike the last clear chance doctrine, does not act to excuse fault, but rather defines the conduct to be expected of a prudent person in an emergency situation.

*Compton v. Pletch*, 561 N.E.2d 803, 806 (Ind. App. 2 Dist.1990), *modified*, 565 N.E.2d 771 (Ind.App. 2 Dist.1991).

Therefore, we believe that the sudden emergency doctrine remains viable under our comparative negligence rule.

---

**13.** Also in *Lewis v. Kirk*, 168 W.Va. 199, 202, 283 S.E.2d 846, 848 (1981) (*per curiam*), the Court described the sudden emergency doctrine as utilizing "a reduced or more lenient standard of care."

**14.** W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 33, p. 197 (5th ed.1984).

■ Some jurisdictions that have chosen to retain the doctrine emphasize that the existence of an emergency is only one factor, or part of the determination, of what is reasonable care under the circumstances. *See e.g., McCall v. Wilder,* 913 S.W.2d 150 (Tenn. 1995); *Myhaver, supra.* This is in accord with The Restatement (Second) of Torts § 296 (1965) which states:

(1) In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency which requires rapid decision is a factor in determining the reasonable character of his choice of action.

(2) The fact that the actor is not negligent after the emergency has arisen does not preclude his liability for his tortious conduct which has produced the emergency.

Comment b of § 296 explains, in part:

The law does not require of the actor more than it is reasonable to expect of him under the circumstances which surround him. Therefore, the court and jury in determining the propriety of the actor's conduct must take into account the fact that he is in a position where he must make a speedy decision between alternative courses of action and that, therefore, he has no time to make an accurate forecast as to the effect of his choice. The mere fact that his choice is unfortunate does not make it improper even though it is one which the actor should not have made had he had sufficient time to consider all the effects likely to follow his action.

We believe, therefore, that a jury instruction concerning a sudden emergency must state that the existence of an emergency requiring a rapid decision is *one factor* in the total comparative fault analysis. Such an instruction should be included in the instruction on determining the comparative negligence of the parties and should not be a separate instruction. This will avoid placing undue emphasis on the existence of the sudden emergency.

■ The use of the sudden emergency doctrine under the comparative negligence rule may not operate as a total defense to a party's negligence. For example, a jury may still determine that a party reacted in a sudden emergency as a reasonably prudent person and, as a result, assign zero percentage of fault to that party. On the other hand, a jury may determine that conduct amounting to negligence under normal circumstances is merely mitigated by the existence of a sudden emergency and, therefore, allot that party a lesser percentage of the fault. Finally, a jury may still decide that a party's reaction to a sudden emergency merits one hundred percent of the fault.

■ Further, we discourage the use of sudden emergency instructions. We reiterate that a sudden emergency instruction is to be given rarely, in instances of truly *unanticipated* emergencies which leave a party little or no time for reflection and deliberation, and not, for example, in cases involving everyday traffic accidents arising from sudden situations which, nevertheless, reasonably prudent motorists should expect.

We note, also, that because the guidelines set forth above for the use of sudden emergency instructions involve modifications or clarifications rather than the outright reversal of a prior case, we do not find the rules relating to retroactive application of a brand new rule applicable here. Instead, we state simply that the above guidelines are to be utilized in the future by trial courts in those rare cases in which a sudden emergency instruction is necessary.

### F.

■ Having, we hope, settled the state of the law concerning the sudden emergency doctrine, we now turn to the specific cases before us. In the first case, the appellants, Ray and Mary Moran, assert that the trial court's failure to give a sudden emergency instruction on appellant Moran's behalf was prejudicial error. The appellants' argument on this issue is as follows. There was evidence presented at trial that the roadway was completely blocked by the appellees' coal trucks. Such blocking of a roadway is a violation of W.Va.Code §§ 17C-13-1 and

17C–13–3.[15] Because Moran had a right to presume that other motorists would obey the law, he was not negligent in failing to anticipate the illegal behavior of the appellees. Further, the appellants claim that the failure to give the sudden emergency instruction was prejudicial in light of the fact that the court did instruct the jury that if Moran was driving his vehicle at such a rate of speed that he could not avoid colliding with an object, he was *prima facie* negligent.[16] According to the appellants, the effect of the court giving those instructions without also instructing the jury as to sudden emergency was tantamount to directing a verdict.

We disagree with the appellants. Although the parties concur that the offered instruction on sudden emergency was refused because of the court's belief that the doctrine is not compatible with the law of negligence, the appellees objected to the instruction on the ground that it was not supported by the evidence, and we believe that the instruction could have been properly refused for that reason. An essential element of the sudden emergency doctrine is that a party not have time for reflection. A sudden emergency "connotes an unanticipated and unforeseen event or condition, arising in the twinkling of an eye, which calls for *instantaneous* action in order to avert an undesirable result" (emphasis added).[17] If a party has the time to deliberate over several options, the doctrine is clearly not applicable. In this

case, Moran was traveling at an estimated 25 to 30 miles per hour when he first observed the coal trucks approximately 300 feet in the distance. According to the appellants' brief to this court, upon seeing the coal trucks, Moran "panicked" and applied the brakes. By his actions, Moran unfortunately foreclosed the opportunity he had, a time period of several seconds, to consider options for avoiding the trucks other than the one he chose *without deliberation.* Because Moran was provided with time for reflection, the circuit court could have found that a sudden emergency instruction was not applicable here. As noted above, we will presume "that a trial court acted correctly in ... refusing to give instructions to the jury, unless it appears from the record in the case ... that the instructions refused were correct and should have been given." Syllabus Point 1, *Turner, supra.* We do not believe that the record indicates that the instruction should have been given. Therefore, we affirm the ruling of the circuit court on this issue.

In the second case, appellant Fletcher essentially avers that it was reversible error for the court to give a sudden emergency instruction on behalf of the appellee because any sudden emergency was created in whole or in part by the appellee's own negligence. The appellant notes that it is negligence as a matter of law for a motorist to drive a vehicle at such a rate of speed that he cannot stop in time to avoid an obstruction plainly discernible within his range of

---

**15.** W.Va.Code § 17C–13–1 prohibits the stopping, parking, or leaving of a vehicle on the main-traveled part of a highway when it is practicable to leave the vehicle off the highway, and mandates that an unobstructed width of the highway opposite a standing vehicle be left open for the passage of other vehicles for a distance of two hundred feet in each direction. W.Va.Code § 17C–13–3 prohibits, in part, the stopping, standing, or parking of a motor vehicle on any highway "where the safety and convenience of the traveling public is thereby endangered."

**16.** Defendants' Atha and Fornash Instruction No. 5A, given by the court, states:

You are instructed that the road and traffic laws of this state require that all drivers drive at a speed that is reasonable and prudent under the conditions. The law provides that in every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highways in compliance with legal re-

quirements and the duty of all persons to use due care.

You are further instructed that the road and traffic laws of this state require that a driver shall drive at an appropriate reduced speed when approaching and going around a curve, when traveling upon any narrow or winding roadway and when special hazard exists with regard to other traffic, or by reason of weather or highway conditions.

Defendants' Atha and Fornash Instruction No. 5B, given by the court, states:

The violation of road and traffic laws is *prima facie* evidence of negligence. In order to be actionable, such violation must be a proximate cause of a claimed injury.

Therefore, if you find that any party was in violation of the road and traffic laws, and that such violation was a proximate cause of the accident, then such party was *prima facie* guilty of negligence and you should assign such percentage of fault to him as you believe appropriate.

**17.** Gillespie, *supra* note 4, at 392.

vision. *Citing* Syllabus Point 6, *Wager, supra.* In addition,

> The operation of a motor vehicle at night, when visibility is obscured by mist and other weather conditions, at such rate of speed that the operator thereof could not stop or control the same within the range of his vision ahead, as a matter of law constitutes negligence proximately contributing to an injury resulting from a collision with another vehicle stopped on the right side of the paved portion of the road.

Syllabus Point 4, *Divita v. Atlantic Trucking Company,* 129 W.Va. 267, 40 S.E.2d 324 (1946), *overruled on other grounds by Everly v. Columbia Gas of West Virginia, Inc.,* 171 W.Va. 534, 301 S.E.2d 165 (1982). According to the appellant, the estimated speed of the appellee was in excess of the speed limit, whether the speed limit was 40 or 50 miles per hour as disputed at trial. Because of his excessive speed, the appellee was unable to stop within a safe distance and, therefore, negligently caused the accident.

In Syllabus Point 2 of *Snedeker v. Rulong,* 69 W.Va. 223, 71 S.E. 180 (1911), this Court stated "[i]f there be evidence tending in some appreciable degree to support the theory of proposed instructions, it is not error to give such instructions to the jury, though the evidence be slight, or even insufficient to support a verdict based entirely on such theory." Here, there was testimony that the appellant was required, but failed, to yield the right-of-way to the appellee motorist. In addition, the appellant was wearing dark clothing and did not carry a light. Finally, the appellee testified that the appellant "popped" out in front of him so that he did not even "have time to think." In light of this evidence, we do not believe the court abused its discretion in giving a sudden emergency instruction. Also, we believe there was sufficient evidence from which a jury could have concluded that the appellee did not contribute to the emergency situation. The accident report of the investigating officer did not find that the appellee exceeded the speed limit or exceeded a safe speed. The appellee's expert witness testified that the appellee may have been traveling below 50 miles per hour. Also, a Department of Highways employee testified that the speed limit in the area of the accident was 50 miles per hour. Again, after considering all the evidence in this case, we are unable to conclude that a sudden emergency instruction was improperly given or considered by the jury in this case. Finally, as a second assignment of error, the appellant maintains that the sudden emergency doctrine should not be the law in West Virginia. We have addressed that issue above. We, therefore, affirm the circuit court.

## IV.

## CONCLUSION

In summary, we affirm the circuit court's refusal to give a sudden emergency instruction on behalf of the appellant in *Moran v. Atha Trucking, Inc.,* and we affirm the circuit court's giving of a sudden emergency instruction on behalf of the appellee in *Fletcher v. Sias.*

Affirmed.

STARCHER, Justice, concurring.

(Filed Jan. 16, 2001)

I concur with the majority's opinion, and write to emphasize that all negligence cases are to be tried exclusively under the umbrella of comparative negligence principles.

As the majority opinion deftly discusses, the common law is constantly flexing to change with the times. Nineteenth century concepts of contributory negligence have given way to principles of comparative negligence. However, vestigial doctrines of the contributory negligence era, such as the "sudden emergency" doctrine or the "clear distance ahead" rule, as well as other doctrines, continue to exist.

It seems to me that with the clear principle of comparative negligence, as adopted by this Court in *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979), other doctrines, that heretofore may have been defenses, should be merged under the umbrella doctrine of comparative negligence

and simply become *factors* for the jury to consider in determining the comparative negligence of the parties.

I refer specifically to doctrines such as assumption of risk,[1] last clear chance,[2] sudden emergency, rescue doctrine,[3] and the clear distance ahead doctrine. These factors, when relevant to a particular case, should be instructed upon by the judge, but it should be made clear that these are simply *factors* in determining the comparative negligence of the parties, and *not* defenses when assigning comparative fault to the parties.

And, accordingly, a party should certainly be allowed to argue to the jury the relevance of any of these doctrines as they are applicable to a particular case.

I therefore concur with the majority's opinion that courts should rarely give a sudden emergency instruction, and only then as a part of a comparative negligence instruction.

---

**1.** *See, e.g., King v. Kayak Mfg. Corp.,* 182 W.Va. 276, 387 S.E.2d 511 (1989) (adopting "comparative assumption of risk"); *Spurlin v. Nardo,* 145 W.Va. 408, 114 S.E.2d 913 (1960).

**2.** The "last clear chance" rule ameliorated the harsh effects of the contributory negligence rule in the following circumstance:

[A] negligent plaintiff, oblivious of impending danger, may nevertheless recover for injuries, where the defendant knew of the plaintiff's situation and, under the circumstances, in the exercise of reasonable care, should have realized the plaintiff's peril, and, on such realization, could have avoided the injury.

Syllabus Point 4, in part, *Meyn v. Dulaney–Miller Auto Co.,* 118 W.Va. 545, 191 S.E. 558 (1937). *See also, Smith v. Gould,* 110 W.Va. 579, 159 S.E. 53 (1931).

In *Ratlief v. Yokum,* 167 W.Va. 779, 786–86, 280 S.E.2d 584, 589 (1981), the Court acknowledged that there was "little practical reason" for maintaining the last clear chance rule, and therefore chose to "abolish the use of the doctrine of last clear chance for the plaintiff."

**3.** *See, e.g., Bond v. Baltimore & Ohio Railroad Co.,* 82 W.Va. 557, 96 S.E. 932 (1918).